UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-02-01-T |
| | : | |
| ROBERT A. URCIUOLI, | : | |
| FRANCES P. DRISCOLL, | : | |
| PETER J. SANGERMANO, JR., and | : | |
| ROGER WILLIAMS MEDICAL CENTER | : | |

**DEFENDANT PETER J. SANGERMANO, JR.'S**
**MOTION TO DISMISS THE INDICTMENT**

Defendant Peter J. Sangermano, Jr. ("Sangermano") respectfully moves to dismiss each count of the Indictment, which asserts one count for conspiracy in violation of 18 U.S.C. § 371 (Count 1) and 37 counts for scheming to commit honest services mail fraud in violation of 18 U.S.C. §§ 2, 1341 and 1346. As grounds, Sangermano states that the Indictment does not state a violation of the offenses charged. Sangermano joins in, adopts and incorporates by reference the legal arguments set forth in defendant Robert A. Urciuoli's Motion to Dismiss the Indictment and its accompanying memorandum of law. As further grounds, Sangermano respectfully submits herewith a Memorandum of Law in support of his Motion to Dismiss the Indictment.

WHEREFORE, Sangermano respectfully requests that the Court dismiss each count of the Indictment against him.

Respectfully submitted,

PETER J. SANGERMANO,

By his attorneys,

James P. Redding
A. John Pappalardo
Greenberg Traurig LLP
One International Place
Boston, MA 02110
(617) 310-6000
reddingj@gtlaw.com
pappalardoj@gtlaw.com

Dated: April 3, 2006

## CERTIFICATION

I certify that I caused a copy of the within Motion to Dismiss the Indictment to be mailed on April 3, 2006 to counsel of record, as stated below:

Robert Clark Corrente
United States Attorney
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux (Counsel for Roger Williams Medical Center)
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Thomas Frongillo (Counsel for Roger Williams Medical Center)
Weil Gotshal & Manges LLP
100 Federal Street
Floor 34
Boston, MA 02110

Kevin J. Bristow (Counsel for Frances P. Driscoll)
505 Turks Head Building
Providence, RI 02903

Robert G. Flanders, Jr. (Counsel for Robert A. Urciuoli)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

Kristie M. Passalacqua (Counsel for Robert A. Urciuoli)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

Michael J. Connolly (Counsel for Robert A. Urciuoli)
Hinckley, Allen & Snyder LLP
28 State Street
2nd Floor
Boston, MA 02109

Richard M. Egbert (Counsel for Robert A. Urciuoli)
99 Summer Street
Suite 1800
Boston, MA 02110

James P. Redding

bos-fs1\caseyp\187158v01\5MZM01_.DOC\4/3/06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
VS. : CR 06-02-01-T
:
ROBERT A. URCIUOLI, :
FRANCES P. DRISCOLL, :
PETER J. SANGERMANO, JR., and :
ROGER WILLIAMS MEDICAL CENTER :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PETER J. SANGERMANO, JR.'S MOTION TO DISMISS THE INDICTMENT**

Defendant Peter J. Sangermano, Jr. ("Sangermano") respectfully submits this Memorandum of Law in support of his Motion to Dismiss the Indictment in the above captioned matter. Sangermano joins in, adopts and incorporates by reference the legal arguments set forth in defendant Robert A. Urciuoli's Motion to Dismiss the Indictment and its accompanying memorandum of law ("Urciuoli's Motion"). This Memorandum limits discussion to the Indictment's deficiencies specific to Sangermano.

## I. INTRODUCTION

The scant facts alleged in the Indictment concerning Sangermano fail to allege his participation in any conspiracy to commit honest services mail fraud or his commission of any substantive offense. The Indictment claims that Defendants induced former State Senator John Celona to deprive the Rhode Island citizenry of their right to Celona's honest services by causing him (i) to be paid money (ii) "to improperly influence Celona's official actions to benefit" Roger Williams Medical Center ("RWMC") and its affiliates (iii) by "deceiving the State of Rhode Island and its citizens" through a Consulting Agreement and misleading representations to the

State's Ethics Commission, holding out that Celona was a consultant for the RWMC affiliate Village at Elmhurst, LLC (the "Village"), when he in fact worked for RWMC. As to Sangermano, the government's theory appears to be that, as an indirect principal of the Village, Sangermano allowed RWMC to use the Village as a conduit for payment to Celona to conceal Celona's relationship with RWMC.

For the reasons set forth in Urciuoli's Motion, the Indictment must be dismissed:

- The government fails to allege any deception, an essential element of an honest services mail fraud claim. 18 U.S.C. §§ 1341, 1346. On the contrary, the Indictment and materials incorporated therein by reference demonstrate that the State of Rhode Island had disclosure of all of the material facts concerning Celona's relationship with RWMC and its affiliates.

- The Indictment does not allege that it was either the objective or the effect of any conspiracy or scheme to cause Celona to deprive the State of Rhode Island of Celona's honest services. On the contrary, the Consulting Agreement obligated Celona to cooperate with counsel to RWMC to secure an advisory opinion from Rhode Island's Ethics Commission (the "Ethics Commission") to identify activities that may be inappropriate. The parties did just that. Moreover, the Ethics Commission issued an advisory opinion, and Celona abided by the restrictions set forth therein.

- Other than Celona's legislative activities, the subject of the Ethics Commission's advisory opinion, the Indictment alleges that Celona provided help to RWMC in other ways, including participation in negotiations with insurers and discussions with local municipalities. That alleged activity does not involve Celona's official actions as a state Senator and therefore does not provide basis for charges of honest services mail fraud.

While the foregoing arguments require dismissal of the Indictment against Sangermano along with his codefendants, the allegations against Sangermano are defective for additional reasons. Indeed, the Indictment itself fatally undermines the government's theory that Sangermano helped to conceal Celona's relationship with RWMC or did anything to deprive the State of Rhode Island of Celona's honest services. Accordingly, the Indictment against Sangermano must be dismissed.

## II. FACTUAL ALLEGATIONS IN INDICTMENT

As it concerns Sangermano, the Indictment alleges that he was a "principal of Village Retirement Communities, LLC" ("VRC"), a non-profit Rhode Island corporation in the business of developing and operating assisted living facilities. Indictment, ¶ 3. VRC and an entity called "NATCO Products, Inc.," mentioned once in the Indictment, were (apparently) the sole partners of an entity called "SANAT Properties, L.L.P." ("SANAT"), also mentioned but once. Id., ¶ 3. SANAT and Roger Williams Realty Corporation ("Roger Williams Realty"), a wholly owned, for-profit subsidiary of RWMC that owned and managed real estate for RWMC, were the sole and equal owners of the Village at Elmhurst, LLC (the "Village"), an assisted living facility. Id., ¶¶ 4, 5.

The Indictment does not allege that Sangermano had any ownership interest in, position with, or responsibility for RWMC, Roger Williams Realty, NATCO, SANAT, or the Village. As noted, all the Indictment alleges is that Sangermano was a "principal" of VRC, a part owner of another entity that, along with Roger Williams Realty, co-owned the Village.

The Indictment alleges that at some time in the fall of 1997, defendant Urciuoli, the president and CEO of RWMC, discussed the hiring of Celona with Sangermano. Indictment, ¶ 26. Sangermano allegedly "initially opposed the Village's hiring of Celona." Sometime before December 11, 1997, however, Urciuoli told Sangermano that Roger Williams Realty, the other co-owner of the Village with SANAT, would pay Celona's salary. Id., ¶ 27. As a result of Urciuoli's offer, Sangermano agreed to have the Village enter into a Consulting Agreement with Celona. Id. "On or about February 1, 1998, Celona began working for RWMC *and the Village* and reporting to [defendant Frances] Driscoll, a senior vice president at RWMC." Id., ¶ 28 (emphasis added). In other words, it appears that, like a good businessman, Sangermano

managed to obtain Celona's consulting services for the Village without incurring any obligations for SANAT, the entity in which Sangermano's VRC held an interest.

The Indictment further alleges that at times between October 15, 1997 and July 22, 1998, Urciuoli, Driscoll and Sangermano caused the consulting agreement to be drafted, re-drafted and then executed in a manner so that it falsely and fraudulently purported to be a consulting agreement between Celona and the Village which stated that "'[t]he management of the Village … wishes to engage you … to provide the following services on behalf of the Village ... *and Elmhurst Extended Care ("Elmhurst")*,' when [Defendants] all knew that the true nature of the employment agreement was for Celona to perform duties for RWMC…." Indictment, ¶ 25 (emphasis added).

The Indictment does not allege what Sangermano contributed to this drafting process, or explain how he knew, or could have known, that there existed some "true nature" of the "agreement" which differed from its actual, written terms. Indeed, according to the Indictment, it was Sangermano who "initially opposed the Village's hiring of Celona," but relented when Urciuoli agreed that the costs would come out of Roger Williams Realty's pocket alone. Id., ¶¶ 26-27. The government's allegation here itself is not "true" either to the Consulting Agreement on its face or to its "true nature." As the Indictment otherwise admits, Elmhurst was a nursing home *wholly owned by RWMC*; RWMC had a half ownership of the Village itself through its wholly owned Roger Williams Realty subsidiary; and, pursuant to the Consulting Agreement, "on or about February 1, 1998, Celona began working for RWMC *and the Village* . . . ." Id., ¶¶ 4-5, 28 (emphasis added). Moreover, the Consulting Agreement provided:

> Given your position as a Rhode Island state senator, there will be situations in which your performance hereunder will conflict with your responsibilities as a senator. It is essential to delineate what areas of conflict may develop. Accordingly, counsel to RWMC will assist you with preparing and submitting a request for an advisory opinion from the

> Rhode Island Ethics Commission. You agree to cooperate fully with such efforts and consent to this agreement being attached to such request.

Exhibit A, attached hereto.[1] In other words, the Consulting Agreement on its face indicates that Celona would be retained to represent entities owned entirely or in substantial part by RWMC and, because of the risk of conflicts arising between Celona's respective duties as a Senator and responsibilities under the Consulting Agreement, Celona had to submit to agree to air these issues with the Rhode Island Ethics Commission.

Moreover, as the Indictment alleges, on April 6, 1998, "legal counsel for RWMC" -- the entity whose involvement was ostensibly being concealed -- sent a letter to the Ethics Commission, attaching a copy of the Consulting Agreement and requesting an advisory opinion. Indictment, ¶ 44. See Exhibit B attached hereto. Among other things, the Consulting Agreement disclosed that Celona's duties included a commitment to "keep abreast of legislative issues and regulations at the local, state and federal levels that impact or could impact the Village delivery of care with particular emphasis on efforts to regulate or license assisted living facilities." Ex. A, p. 2. Further, as more fully addressed in Urciuoli's Motion, RWMC's counsel's letter disclosed the nature and extent of his client's involvement in and relationship to Celona's consulting work.

Thereafter, the Ethics Commission issued Advisory Opinion No. 98-59 (the "Advisory Opinion"), detailing the permissible scope and limitations on Celona's activities under the Consulting Agreement and on his official business in the Rhode Island Senate. Urciuoli Motion, See Ex. C, attached hereto. Among others things, the Advisory Opinion makes clear that the Ethics Commission fully understood that Celona's consulting work was not limited to the Village, but extended to its affiliates and related entities, which manifestly included RWMC

---

[1] On a motion to dismiss an indictment, as here, the Court may consider documents outside the indictment, but cannot give any weight to contrary factional assertions by the defendant. See, e.g., United States v. Forrester, 2002 U.S. Dist. Lexis 13223*4 (S.D.N.Y. July 22, 2002).

affiliates. The Advisory Opinion further provided, *inter alia*, that while Celona could not vote on and participate in legislation that would specifically affect assisted living facilities, he was permitted to fully participate in and vote on broad-based legislation involving general health care issues of public interest. See Ex. C, p. 6. Such general health care issues included legislation related to "elderly affairs, nursing homes issues and hospital regulations." Id.

The Indictment purports to allege several instances in which Celona had discussions with Driscoll and/or Urciuoli regarding matters of interest to RWMC, and engaged in actions related thereto, including: ambulance transports from municipalities to the hospital (¶¶ 35-39); proposed legislation regarding hospital for-profit conversion and mergers (¶¶ 39-40; 45-49); proposed legislation regarding a "Cancer Council" (¶¶ 54-60); proposed "payment in lieu of tax" legislation (¶¶ 61-64); "bone marrow legislation" (¶¶ 65-67); "other" "lobbying duties" (¶¶ 68-72); dealing with Blue Cross (¶¶ 73-86); and dealing with United (¶¶ 87-91). *The Indictment does not allege, even in conclusory terms, that Sangermano had had any involvement in, any knowledge of, or any discussions concerning, any of this alleged conduct.* Similarly, the Indictment does not allege, even in generalities, that Sangermano had had any involvement with or knowledge of any communications with the Ethics Commission. Id., ¶¶ 41-45.

Indeed, the Indictment only alleges two instances of any substantive business discussion between Sangermano and Celona. Both matters pertained to *the Village,* on subjects relevant to Celona's duties under the Consulting Agreement's provision to "keep abreast" of legislative issues and regulations "with particular emphasis on efforts to regulate or license assisted living facilities" -- which, without question, were fully disclosed to the Ethics Commission. The Indictment alleges:

- In February 1998, Driscoll and Sangermano "directed" Celona to "work to defeat" a senate bill, "An Act Relating to Residential Care and Assisted Living

Facilities," which would have prohibited facilities like the Village from holding themselves out as offering Alzheimer's care unless such facilities were licensed nursing homes or hospitals. In the same month, Celona advocated other legislators to have the legislation "held," which would prevent it from advancing. Indictment, ¶ 33. Curiously, the Indictment does not allege whether Driscoll's and Sangermano's "direction" came before or after Celona's alleged advocacy. In any event, as more fully explained in Urciuoli's Motion, the legislation related to general health care issues, including nursing homes and hospitals, and therefore was within the scope of permissible activity even as later determined by the Ethics Commission. Most crucially, because the relationship between the Village and Celona is spelled out in the Consulting Agreement, there is no evidence or any concealment or deception by Sangermano.

- Similarly, the Indictment alleges that in March 1999, Sangermano asked Celona to ask two other legislators to sponsor an amendment to the extension of a moratorium on licensing new nursing home beds, which if passed would have had a "positive impact on the finances of the Village." Indictment, ¶ 50. As the Urciuoli Motion explains, this alleged conduct also was within permissible bounds of the Advisory Opinion; the bills never passed; and Celona recused himself from deliberations and voting.

The Indictment also alleges that in October 2000 Sangermano sent Celona a letter enclosing copies of the Consulting Agreement, amended to increase Celona's salary, and signed by Sangermano, with a request that Celona sign and return a copy to Sangermano's attention. The government asserts that Sangermano did not amend the Consulting Agreement to reflect the "true identity of Celona's employer or the true nature of the work Celona had been and would be performing." Indictment, ¶ 93. This assertion stands in stark contrast with what the Indictment otherwise alleges, and fails to allege. The Indictment alleges that Celona had been hired by and began work for the Village on February 1, 1998 (¶ 28); that the Consulting Agreement stated that Celona would do work on behalf of the Village *and* RWMC's wholly owned subsidiary Elmhurst Extended Care (¶ 25); and that Celona had in fact done work for the Village and its RWMC affiliate. (See, e.g., ¶¶ 50-53). The Indictment *does not allege* that Sangermano had any knowledge of any of Celano's alleged activities on behalf of RWMC.

## III. STANDARD OF REVIEW

Dismissal of an indictment is warranted where, construing the facts in the light most favorable to the government, the government's theory of prosecution fails as a matter of law. See United States v. Treadwell, 566 F. Supp. 80, 83 (D.D.C. 1983) ("[I]t is the government's theory that fails, not the weight of its evidence. For this reason, dismissal of the mail fraud counts is warranted."); see also United States v. Hope, 861 F.2d 1574, 1578 (11th Cir. 1988) (affirming dismissal of count in indictment because allegations therein failed to state a violation of the charged offense).

"To be legally sufficient, the indictment must assert facts which in law constitute an offense and which, if proved, would establish prima facie the defendant's commission of that crime." United States v. Superior Growers Supply, Inc., 982 F.2d 173, 177 (6th Cir. 1992) (citing Fleisher v. United States, 302 U.S. 218 (1937)). Thus, while it is necessary that an indictment contain the elements of the offense charged, fairly inform a defendant of the charge against which he must defend, and enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense, the government also must allege facts that, if true, would demonstrate that the accused committed the charged offense. As the Supreme Court has observed:

> Undoubtedly the language of the statute may be used in the general description of the offense, but it must be accompanied with such *a statement of the facts and circumstances as will inform the accused of the specific offense*, coming under the general description, with which he is charged.

Hamling v. United States, 418 U.S. 87, 117-18 (1974) (quotations omitted; emphasis added). "If the indictment is legally deficient, the proper result is dismissal of the indictment." United States v. Landham, 251 F.3d 1072, 1080 (6th Cir. 2001). Furthermore, resort to a bill of particulars in

this case would be unavailing. "A bill of particulars cannot cure a legal deficiency; rather the proper result is dismissal of the indictment." Superior Growers Supply, Inc., 982 F.2d at 177.

In this case, the Indictment does not allege facts which if true would establish that Sangermano committed a substantive honest services mail fraud violation or participated in a conspiracy to do so. Accordingly, the Indictment must be dismissed.

## IV. ARGUMENT

### A. The Elements of Honest Services Mail Fraud.[2]

To prove honest services mail fraud, the government must prove the elements of mail fraud under 18 U.S.C. §1341 and the requirements 18 U.S.C. § 1346. Mail fraud requires proof that the defendant: (1) participated in a scheme or artifice to defraud;[3] (2) participated knowingly, willfully and with specific intent to defraud; and (3) used the mails in furtherance of the scheme. United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998). "Willfully" means to act knowingly and purposely, with intent to do something the law forbids . . . with bad purposes either to disobey or to disregard the law." Id. In other words, the government must prove beyond a reasonable doubt that the defendant believed he was committing a crime or violating the law at the time that he made use of the mails. Id. Good faith is a complete defense to mail fraud, and the burden is on the government to prove lack of good faith beyond a reasonable doubt. Id.

---

[2] The Indictment charges one count of conspiracy to commit honest services mail fraud, in violation of 18 U.S.C. § 371, and thirty-five counts of honest services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. In regard to Count One, the Government will be required to prove that the object of the agreement would meet all the essential elements of the underlying offense, *i.e.* honest services mail fraud. See United States v. Potter, No. Cr 03-081 ML, 2005 WL 2367677, *2, *6 (D. R.I. Sept. 27, 2005). Accordingly, the legal analysis focuses on the requirements of that offense.

[3] Section 1346 defines the term "scheme or artifice to defraud" as a scheme or artifice to deprive another of the intangible right of honest services.

In honest services cases, the "requirement that the defendant act with specific intent to defraud encompasses both an intent to deprive the public of the honest performance of the public official's service and an intent to deceive the public." United States v. Potter, No. CR 03-081 ML, 2005 WL 2367677, *6 (D.R.I. Sept. 27, 2005) (citing United States v. Sawyer, 239 F.3d 31, 41 (1st Cir. 2001) ("Sawyer II"); see also United States v. Sawyer, 85 F.3d 713, 729 (1st Cir. 1996) ("Sawyer I"). For the government to establish the intent to deprive the public of an official's honest services, it must prove that the defendant intended to influence the legislator in his "*official* action." Id. at 729 (emphasis added). Moreover, with respect to the element of deception, a scheme "must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Hawkey, 148 F.3d 920, 924 (8th Cir. 1998) (citation and internal quotation marks omitted). In cases against non-public officials, the Government must prove that the target of the scheme is the deprivation of the official's honest services. Sawyer I, 85 F.3d at 725.

Ordinarily, a charge for honest-services fraud "cannot stand where the conduct does not actually deprive the public of its right to … honest services." Sawyer I, 85 F.3d at 725. In a prosecution of a non-public official, "[i]f the 'scheme' does not, as its necessary outcome, deprive the public of honest services, then independent evidence of the intent to deprive another of those services must be presented." Id., citing: United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994) ("Where the scheme does not cause injury to the alleged victim as its necessary result, the government must produce evidence independent of the alleged scheme to show the defendant's fraudulent intent."); United States v. Von Barta, 635 F. 2d 999, 1005-06 n.14 (2d Cir. 1980) ("the prosecution must prove that some actual harm or injury was at least contemplated").

Further, to establish the specific criminal intent to deceive the public, the government must show that the defendant knew that his or her actions were fraudulent and, despite this knowledge, proceeded to take steps designed to conceal these fraudulent actions. Sawyer II, 239 F.3d at 39, 47; see also United States v. Grandmaison, 77 F.3d 555, 558 (1st Cir. 1996) (after defendant recused himself from local governing board based on a conflict of interest, the defendant "secretly took steps to manipulate the contracts" by giving other board members information tapes, gifts, and gratuities); United States v. Silvano, 812 F.2d 754, 756-58 (1st Cir. 1987) (defendants continually made intentional and knowing false statements to other public officials with the specific intent to deceive them).

**B. The Government Fails To Allege Any Crime by Sangermano.**

The government's theory of prosecution is that Defendants deceived the State of Rhode Island and its citizens concerning Celona's relationship with RWMC by failing to disclose Celona's conflict of interest to the Rhode Island Ethics Commission and seeking an advisory opinion from the Ethics Commission based on false, misleading and incomplete information. See Indictment, ¶ 20. The Indictment specifically alleges that Urciuoli, Driscoll and Celona "misrepresented the true nature of the work he had been and would be performing," "failed to disclose that Celona had been performing political services for RWMC," and "failed to disclose that RWMC would be funding the payments made by the Village to Celona." Id. ¶ 44. For reasons discussed in Urciuoli's Motion, the Indictment does not and cannot possibly deliver any set of facts that support this accusation, and therefore must be dismissed.

As to Sangermano, moreover, the Indictment fails in an even more obvious and fundamental way. Except for its conclusory epithets, the Indictment alleges that Sangermano did nothing more than: (1) participate in hiring Celona to provide consulting services for the Village

and Elmhurst Extended Care; and (2) discuss matters with Celona concerning services to the Village. The government does not allege -- nor could it -- that the necessary deception on the public arose from some undisclosed or misrepresented arrangement regarding Celona's services on behalf of the Village. The Village's hiring of Celano was not only fully disclosed to the Ethics Commission but was literally headline news.

The Indictment similarly fails to charge any crime against Sangermano to the extent the government seeks to impose responsibility on him for Celona's alleged efforts on behalf of RWMC. Even if the Indictment's allegations concerning Celona's activities on behalf of RWMC alleged any crime -- and they do not, for reasons state in Urciuoli's Motion -- the government simply does not allege a single fact or circumstance to associate Sangermano with any such activity. The government does not allege, even in generic terms, that Sangermano had any foreknowledge or contemporaneous knowledge of conduct by Celona on behalf of RWMC. Moreover, as spelled out right in the Consulting Agreement itself, Elmhurst Extended Care -- a wholly owned subsidiary or RWMC -- was also to receive Celona's services. The Indictment, however, does not allege that Sangermano had any involvement with, responsibility for, or any sort of association with Elmhurst Extended Care. The government does not even allege any facts or conclusions that Sangermano should have had reason to know that whatever Celona allegedly was doing on behalf of RWMC was not fully consistent with his duties to Elmhurst Extended Care. Indeed, the Indictment affirmatively alleges that Celona reported to Driscoll, and not Sangermano. Indictment, ¶ 25.

The government's charges against Sangermano, in essence, depend upon two unstated premises: that the arrangement between the Village and Celona was a sham; and/or that

Sangermano recklessly disregarded[4] that Celona was in fact carrying on improper lobbying efforts on behalf of RWMC and was remunerated therefore by RWMC through the sham Consulting Agreement. The government's charges against Sangermano fail, however, because each of these premises is untenable.

First, the premise that the arrangement with the Village was a sham is contradicted by the very facts pled in the Indictment. The Indictment not only fails to plead that Celona was not doing anything for the Village (and Elmhurst Extended Care) -- it pleads that he began working for the Village in February 1998, never claims he stopped working for the Village, and even alleges two instances in which Sangermano discussed matters with him relating to general legislation of interest to the Village. The government, in contrast, does not even make a conclusory assertion that Celona did not, in fact, provide services to the Village under the Consulting Agreement.

Finally, as a matter of law, Sangermano cannot be held to answer to a charge of a "reckless" honest services mail fraud, as the crime requires proof that defendant acted "knowingly and purposely, with intent to do something the law forbids." United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998).

[4] The government does not make even a conclusory assertion that Sangermano had any knowledge of any of the alleged activities by Celona on behalf of RWMC.

## CONCLUSION

In light of the foregoing, the Government's theory of prosecution as to Sangermano fails as a matter of law. Therefore, the Indictment must be dismissed.

Respectfully submitted,

PETER J. SANGERMANO,

By his attorneys,

James P. Redding
A. John Pappalardo
Greenberg Traurig LLP
One International Place
Boston, MA 02110
(617) 310-6000
reddingj@gtlaw.com
pappalardoj@gtlaw.com

Dated: April 3, 2006

**CERTIFICATION**

I certify that I caused a copy of the within Memorandum of Law in Support of Defendant Peter J. Sangermano, Jr.'s Motion to Dismiss the Indictment to be mailed on April 3, 2006 to counsel of record, as stated below:

Robert Clark Corrente
United States Attorney
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Gerard B. Sullivan
Criminal Chief
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Luis M. Matos
Assistant U.S. Attorney
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

Dulce Donovan
Assistant U.S. Attorney
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

William P. Devereaux (Counsel for Roger Williams Medical Center)
Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

Thomas Frongillo (Counsel for Roger Williams Medical Center)
Weil Gotshal & Manges LLP
100 Federal Street
Floor 34
Boston, MA 02110

Kevin J. Bristow (Counsel for Frances P. Driscoll)
505 Turks Head Building
Providence, RI 02903

Robert G. Flanders, Jr. (Counsel for Robert A. Urciuoli)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

Kristie M. Passalacqua (Counsel for Robert A. Urciuoli)
Hinckley, Allen & Snyder LLP
1500 Fleet Center
Providence, RI 02903

Michael J. Connolly (Counsel for Robert A. Urciuoli)
Hinckley, Allen & Snyder LLP
28 State Street
2nd Floor
Boston, MA 02109

Richard M. Egbert (Counsel for Robert A. Urciuoli)
99 Summer Street
Suite 1800
Boston, MA 02110

James P. Redding