**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **v.** | ) | **CRIMINAL NO. 06-02-01-T** |
| **ROBERT A. URCIUOLI,**<br>**FRANCES P. DRISCOLL, and**<br>**PETER J. SANGERMANO, JR.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT PETER J. SANGERMANO, JR.'S**
**MOTION FOR JUDGMENT OF ACQUITTAL**

Pursuant to Fed. R. Crim. P. 29(a), Defendant Peter J. Sangermano, Jr. ("Mr. Sangermano"), through counsel, respectfully submits this memorandum of law in support of his Motion for Judgment of Acquittal. In support of this Motion,[1] as is set forth more fully below, Mr. Sangermano states the government has utterly failed to meet its burden of presenting sufficient evidence by which a reasonable trier of fact could find Mr. Sangermano is guilty beyond a reasonable doubt of knowingly and willfully either violating, or aiding or abetting others in the violation of, the federal mail fraud statute incident to a scheme to defraud the State of Rhode Island and its citizenry of the honest services of former state senator John Celona, as alleged in the charged substantive offenses, Counts 2-38 of the Indictment, or of conspiring to defraud the State of Rhode Island and its citizenry of the honest services of former state senator John Celona, as alleged in Count 1.

## STANDARD OF REVIEW

Rule 29 directs the Court to enter a judgment of acquittal on any and all counts where the evidence adduced at trial, viewed in the light most favorable to the government, is so insufficient

[1] Counsel for Mr. Sangermano note that as they do not have access to a transcript of any kind of this trial, they are limited to summarizing events that occurred therein on the basis of memory and available notes.

that no rational trier of fact could find proof beyond a reasonable doubt. Fed. R. Crim. P. 29(a). In making this assessment on a Rule 29 motion, the Court of Appeals for the First Circuit instructs that the Court must "take a hard look at the record and [] reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative. This function is especially important in criminal cases, given the prosecution's obligation to prove every element of an offense beyond a reasonable doubt." United States v. Woodward, 149 F.3d 56, 57 (1st Cir. 1998) (citations omitted). Thus framed, the only reasonable course in view of the state of the evidence is a judgment of acquittal on all counts charged against Mr. Sangermano.

## ARGUMENT

### I. NO REASONABLE TRIER OF FACT COULD FIND MR. SANGERMANO IS GUILTY BEYOND A REASONABLE DOUBT OF SUBSTANTIVE, OR CONSPIRING TO COMMIT, HONEST SERVICES MAIL FRAUD VIOLATIONS.

#### A. The Elements of Honest Services Mail Fraud.

To prove honest services mail fraud, the government must adduce evidence sufficient to prove beyond a reasonable doubt each of the elements of mail fraud under 18 U.S.C. §1341 and the requirements 18 U.S.C. § 1346. Mail fraud requires proof that the defendant: (1) participated in a scheme or artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona;[2] (2) knowingly, willfully and with specific intent to defraud; and (3) used the mails in furtherance of the scheme as specified in the Indictment. Woodward, 149 F.3d at 54.

"Knowingly" means to act voluntarily and deliberately, rather than by mistake or inadvertence. "Willfully" means to act knowingly and purposely, with intent to do something the law forbids . . . with bad purposes either to disobey or to disregard the law." Id. In other

[2] Section 1346 defines the term "scheme or artifice to defraud" as a scheme or artifice to deprive another of the intangible right of honest services.

words, the government must prove beyond a reasonable doubt that Mr. Sangermano believed he was committing a crime or violating the law at the time that he made use of the mails. Id. Good faith is a complete defense to mail fraud, and the burden is on the government to prove lack of good faith beyond a reasonable doubt. Id.

In honest services cases, the "requirement that the defendant act with specific intent to defraud encompasses both an intent to deprive the public of the honest performance of the public official's service and an intent to deceive the public." United States v. Potter, No. CR 03-081 ML, 2005 WL 2367677, *6 (D.R.I. Sept. 27, 2005) (citing United States v. Sawyer, 239 F.3d 31, 41 (1st Cir. 2001) ("Sawyer II"); see also United States v. Sawyer, 85 F.3d 713, 729 (1st Cir. 1996) ("Sawyer I"). For the government to establish the intent to deprive the public of an official's honest services, it must prove that the defendant intended to influence the legislator in his "*official* action." Id. at 729 (emphasis added). Moreover, with respect to the element of deception, a scheme "must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." United States v. Hawkey, 148 F.3d 920, 924 (8th Cir. 1998) (citation and internal quotation marks omitted). In cases against non-public officials, such as this, the government must prove that the target of the scheme is the deprivation of the official's honest services. Sawyer I, 85 F.3d at 725, citing United States v. D'Amato, 39 F.3d 1249, 1257 (2d Cir. 1994) ("Where the scheme does not cause injury to the alleged victim as its necessary result, the government must produce evidence independent of the alleged scheme to show the defendant's fraudulent intent."); United States v. Von Barta, 635 F. 2d 999, 1005-06 n.14 (2d Cir. 1980) ("the prosecution must prove that some actual harm or injury was at least contemplated").

Further, to establish the specific criminal intent to deceive the public, the government must show that the defendant knew that his or her actions were fraudulent and, despite this knowledge, proceeded to take steps designed to conceal these fraudulent actions. Sawyer II, 239 F.3d at 39, 47; see also United States v. Grandmaison, 77 F.3d 555, 558 (1st Cir. 1996) (after defendant recused himself from local governing board based on a conflict of interest, the defendant "secretly took steps to manipulate the contracts" by giving other board members information tapes, gifts, and gratuities); United States v. Silvano, 812 F.2d 754, 756-58 (1st Cir. 1987) (defendants continually made intentional and knowing false statements to other public officials with the specific intent to deceive them).

**B. The Elements of Conspiracy to Commit Honest Services Mail Fraud.**

To prove Mr. Sangermano conspired to commit honest services mail fraud, the government is required to prove: (1) that the unlawful agreement charged in the Indictment existed between at least two people; (2) that Mr. Sangermano knowingly, willfully and voluntarily joined in that agreement; (3) that at some point during the existence of the conspiracy one of its members committed at least one of the overt act charged in the Indictment; and (4) that overt act was committed to further or advance some objective of the conspiracy.

**C. The Government Has Failed To Adduce Evidence At Trial To Support A Rational Finding Of Mr. Sangermano's Guilt Beyond A Reasonable Doubt Of Any Of The Charged Offenses.**

The government's evidence against Mr. Sangermano is indirect, predicated on strained inferences that are rendered nullities by the weight of credible evidence adduced at trial. In the main, the government's evidence against Mr. Sangermano may be broken down into the following categories, each of which in turn is relied upon as a basis, for example, of inferring Mr. Sangermano's having entered into a conspiracy, or of his having the requisite intent. Each

of these core allegations as to Mr. Sangermano collapse under the weight of the evidence adduced at trial, and preclude any reasonable trier of fact from finding him guilty beyond a reasonable doubt of the charges leveled against him.

- Mr. Sangermano's Alleged Participation in Drafting the Consulting Agreement is Without Evidentiary Support.

The government alleges that from on or about October 15, 1997 to on or about July 22, 1998, Mr. Sangermano "caused the consulting agreement to be drafted, redrafted, and executed in a manner so that it falsely and fraudulently purported to be" between Celona and the Village, not Celona and RWMC. See Indictment, ¶ 25.

In fact, the evidence adduced at trial was all to the contrary: The government's witness, James McGuirk, the primary person responsible for drafting the consulting agreement, testified on direct examination that he had no conversations with Mr. Sangermano relating to the drafting of the consulting agreement.

Mr. Sangermano's witness, Steven Rosenbaum, testified that he had conversations with Mr. Sangermano in late 1997 and early 1998 relating to the consulting agreement, but only to the extent as to whether Mr. Sangermano wished to enter into the contract and what concessions he would receive from Roger Williams Medical Center. Mr. Rosenbaum further confirmed that Mr. Sangermano played no role in the drafting of the consulting agreement.

Furthermore, as discussed below, the consulting agreement accurately and properly set forth the terms and condition of the relationship between Celona and the Village at Elmhurst, and is a contract that Celona admitted he performed pursuant to for more than five years.

- <u>Mr. Sangermano's Alleged Participation in Obtaining the Ethics Commission Advisory Opinion.</u>

The government alleges, in connection with the 2000 revisions to the consulting agreement, that Mr. Sangermano did not "amend the information provided to the Ethics Commission to reflect the true nature of Celona's employment with RWMC." <u>See</u> Indictment, ¶ 93. Celona testified on direct examination that in the two instances when he sought raises, he approached Robert Urciuoli, who facilitated the renewal of the consulting agreement and the increase in compensation.

There has been no evidence put forth that Mr. Sangermano was involved in any way in the renewal of the consulting agreement.

- <u>Mr. Sangermano's Alleged Misuse of Celona in Connection with the Alzheimer's Legislation.</u>

The government alleges, in connection with the so-called Alzheimer's Legislation, that "Driscoll and Sangermano direct Celona to work 'defeat' Senate Bill 98-H 8229, an 'Act Relating to Residential Care and Assisted Living Facilities,' which would prohibit health facilities (such as the Village [at Elmhurst]) from holding themselves out as offering Alzheimer's care to patients unless the facilities were licensed as nursing homes or hospitals. Such an Act if, enacted into law, would have a negative impact on the finances of the Village [at Elmhurst] in that the Village [of Elmhurst] would not be allowed to offer Alzheimer's care to patients without being licensed as a nursing home or hospital." <u>See</u> Indictment, ¶ 33.

Celona testified on cross-examination that he did not recall any conversations with Mr. Sangermano regarding the Alzheimer's Legislation, that he did not send Mr. Sangermano a copy of the bill and that he has no memory of Fran Driscoll telling him to contact Mr. Sangermano

regarding the bill. Celona testified that he did not even know if Mr. Sangermano held a position on the legislation.

Mr. Sangermano's witness, Vincent Mesolella testified that he never had a conversation with John Celona relating to House Bill 98-H 8229[3].

- <u>Mr. Sangermano's Alleged Misuse of Celona in Connection with the Moratorium Legislation.</u>

The government alleges, in connection with the so-called Moratorium Legislation, that "Sangermano asked Celona to have a State Representative and a State Senator sponsor a bill amending the extension of the moratorium on licensing new nursing home beds, House Bill 99-H 6122. Such an amendment was expected to have a positive impact on the finances of the Village [at Elmhurst]." <u>See</u> Indictment, ¶ 50.

Mr. Celona testified on cross-examination that the Moratorium Legislation would benefit the Village at Elmhurst. To the contrary, as made clear by the cross-examination testimony of Dean Martins and Robert Budway, both witnesses of the government, the Village at Elmhurst simply could not receive a benefit from the Moratorium Legislation.

Furthermore an exhibit admitted through Budway, and indeed created and certified by Budway, indisputably demonstrates that the Moratorium Legislation was expected to have an impact upon the Village of Waterman Lake and would have no impact on the Village at Elmhurst, much less have a "positive impact on the finances of the Village [at Elmhurst]." The Village at Waterman Lake is a distinct and separate entity from the Village at Elmhurst, and has no corporate relation to Roger Williams Medical Center, Roger Williams Hospital, or Roger Williams Realty. The Village at Waterman Lake is not mentioned in the indictment and is not

[3] Both the testimony of Celona and Mesolella clearly establish that the Alzheimer's Legislation was a House Bill, and not a Senate Bill, as alleged in indictment.

alleged to be part of any conspiracy or overt act with respect to this case brought by the government.

Moreover, the government has presented no evidence whatsoever tending to prove that merely asking Celona to find a representative and senator to introduce legislation constituted a legislative act in violation of the Rhode Island Ethics Commission Advisory Opinion 98-59.

- Mr. Sangermano's Agreement to Subsequent Revisions to the Consulting Agreement.

James McGuirk testified on cross-examination that Mr. Sangermano, according to the Village at Elmhurst's operating agreement, was the only person authorized to sign contracts involving the Village at Elmhurst. Again, no evidence was adduced by the government at trial that Mr. Sangermano played any role in the drafting of the consulting agreement.

- The Allegation that Celona did not provide services to the Village at Elmhurst, and that the agreement was a sham.

First, the premise that the arrangement with the Village of Elmhurst was a sham is contradicted by the overwhelming weight of credible evidence. The government's own witnesses – most significantly, Celona – refuted the proposition that Celona did not perform work for the Village of Elmhurst. In fact, Celona testified on cross-examination that he in fact did perform duties under the consulting agreement, and testified as to specific events he took part of at the Village at Elmhurst.

In addition, Mr. Sangermano's witness Jennifer Deluca testified as to numerous marketing events which Celona took part in, including events in which he participated and spoke at, television shows, scripted by Ms. Deluca, and hosted by Celona which promoted the Village at Elmhurst, as well as referrals and leads for new residents brought to the Village at Elmhurst by

Celona. Her testimony clearly established that Celona provided a multitude of services and marketing work to the Village at Elmhurst.

## II. JUDGMENT OF ACQUITTAL FOR MR. SANGERMANO ON ALL CHARGED COUNTS IS APPROPRIATE ON THE BASIS OF THE GOVERNMENT'S MISCONDUCT.

For the additional reason of the government's outrageous misconduct, as is set forth in part in the previously filed Defendants' Motion to Dismiss the Indictment Due to Prosecutorial Misconduct (including, without limitation, all supplementary filings thereto) and which is incorporated herein by reference, a judgment of acquittal on all charges should be entered for Mr. Sangermano. Indeed, the evidence adduced at trial has not only failed to support, but instead has powerfully and convincingly refuted the government's allegations against Mr. Sangermano. Mr. Sangermano's having been dragged in as a defendant in this matter was a product of at best recklessness and poor judgment on the part of the government, and at worst by bad faith, misguided tactical design. The Court's order of a judgment of acquittal on all charges for Mr. Sangermano will have the salubrious effect of bringing to a merciful end what has been, as against him at least, a travesty of a prosecution, and spare Mr. Sangermano any further indignity and legal costs.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should enter a judgment of acquittal for Mr. Sangermano on all charged counts.

Respectfully submitted,

PETER J. SANGERMANO, JR.,
By his attorneys,

____/s/ Evan Georgopoulos______
James P. Redding (Bar No. 2976)
A. John Pappalardo
Evan Georgopoulos
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
(617) 310-6000
reddingj@gtlaw.com
pappalardoj@gtlaw.com
georgopoulose@gtlaw.com

Dated: September 28, 2006

**CERTIFICATION**

I hereby certify that on September 28, 2006 a copy of the foregoing was electronically filed and served by mail upon counsel unable to accept electronic filing. Notice of this filing shall be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

____/s/ Evan Georgopoulos______
Evan Georgopoulos