UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' OBJECTION TO DEFENDANT FRANCES DRISCOLL'S MOTION TO STRIKE CERTAIN ALLEGATIONS FROM THE INDICTMENT OR, IN THE ALTERNATIVE, TO PRECLUDE SUBMISSION OF THE INDICTMENT TO THE JURY**

Defendant Frances Driscoll has moved the Court to strike certain allegations in the Indictment, or in the alternative, preclude submission of the Indictment to the jury.[1] The United States objects, in part, to Driscoll's request. The bases for the United States' objection are detailed in the accompanying memorandum of law filed simultaneously herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

[1] Defendant Urciuoli joins in Driscoll's motion and relies on Driscoll's supporting memorandum in support of his request. Accordingly, the United States, although filing a separate objection to Urciuoli's motion, incorporates the arguments contained in the instant supporting memorandum in support of its objection to Urciuoli's motion.

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT FRANCES DRISCOLL'S MOTION TO STRIKE CERTAIN ALLEGATIONS FROM THE INDICTMENT OR, IN THE ALTERNATIVE, TO PRECLUDE SUBMISSION OF THE INDICTMENT TO THE JURY**

## I. Introduction

Through her motion to strike, Defendant Frances Driscoll asks the Court, in essence, to remove from the Indictment all factual allegations against her. In addition, Driscoll asks the Court to strike reference to her on the conspiracy count, Count 1, of which she was acquitted, language defining the public's right to honest services, and sections referencing Celona's conflict of interest. Further, Driscoll asks the Court to delete reference to influencing of Celona in his capacity as Chairman of the Senate Corporations Committee and any reference to Celona's work on the ambulance run issue.

As a general principle, the United States agrees that the Indictment should be conformed to the present posture of the case prior to submission of the jury. Thus, as explained below, the United States does not object to Driscoll's request that the Court strike her name from certain paragraphs in Count 1 of the Indictment. The United States also does not object to Driscoll's request to strike language in the Indictment defining the public's right to honest services,

including its right to have Celona perform his official duties free from a conflict of interest. In contrast, the United States objects to Driscoll's request to delete all factual allegations concerning her conduct, reference to influencing Celona in his capacity as Chairman of the Senate Corporations Committee, and to events concerning the ambulance runs.

## II. Argument

### A. Striking Those Portions of the Indictment Referencing Driscoll's Participation in Conspiracy to Commit Honest Services Mail Fraud Is Appropriate Given Her Acquittal on Count 1

Driscoll has been acquitted on Count 1 of the Indictment, conspiracy to commit honest services mail fraud. Accordingly, the United States does not object to striking her name from the paragraphs in the Indictment which charge her with conspiracy.[2] See Indict. ¶¶ 14, 17-20.

### B. The First Circuit's Decision in Urciuoli Does Not Require Striking All Allegations Relating to Celona's Work on the Rescue Runs

Driscoll maintains that the First Circuit's decision in United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008), requires a reworking of the Indictment such that the Means and Methods section does not refer to Celona's work on the ambulance run issue. The way the Indictment is organized, the Means and Methods section of the scheme to defraud incorporates prior paragraphs in the Indictment, including paragraphs 35 through 38 which allege Celona's work in connection with the rescue runs. See Indict. ¶ 103. The United States does not object to deleting paragraph 103's reference to paragraphs 35 through 38 in light of the Circuit's holding that such

---

[2] For the same reasons, striking any reference to Peter Sangermano, who was acquitted on all counts in the first trial, is also appropriate. Notably, even if there were no Count 2 in the Indictment, Driscoll's name would remain in the overt acts section of the conspiracy count because at the time of the conspiracy, she was employed by RWMC, a remaining coconspirator, and acting in her official capacity as a vice-president, or agent, of RWMC.

conduct cannot form a basis for a violation of the honest services fraud statute. However, at trial, evidence concerning Celona's work on the ambulance run issue is admissible to demonstrate that at the time Urciuoli and Driscoll submitted the April 6, 1998, letter to the Ethics Commission, they knew that Celona was working on political issues of importance to RWMC, not, as the letter to the Ethics Commission stated and the attached consulting agreement delineated, promoting the Village at Elmhurst's senior citizen services. Thus, Celona's work on the ambulance runs demonstrates Urciuoli's and Driscoll's concealment of Celona's relationships to RWMC, an integral part of the honest services fraud case against them.

**C. Because the United States' Theory of the Case is One of Quid Pro Quo Bribery, It Agrees to Conform the Indictment to the Present Posture of the Case and Strike Language in the Indictment Defining the Public's Right to Honest Services and Referencing Celona's Conflict of Interest**

Driscoll also moves to strike language in the Indictment which, she claims, constitutes an "overbroad definition of 'honest services,'" is necessary to "cabin" the honest services mail fraud statute, and inappropriately suggests that the citizens of Rhode Island have the right to have Celona perform his official actions without a conflict of interest. Driscoll Supp. Mem. at 6-9. Specifically, Driscoll asks that the following bolded and underlined language be stricken from the Indictment:

> 96. The Grand Jury further charges that from in or about August 1997, through in or about January 8, 2004, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, devised and intended to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona and to have those services performed free from deceit, **favoritism, bias, conflict of interest** and self-enrichment.
>
> 100. **It was further part of the scheme that defendants, URCIUOLI,**

> <u>**DRISCOLL, SANGERMANO and RWMC, along with Celona, knowingly and willfully failed to disclose to the public that Celona had an improper conflict of interest which deprived the State of Rhode Island and its citizens of their intangible right to his honest services in that Celona obtained money from RWMC in exchange for his political support.**</u>

Because they do not fit with the United States' theory of the case, the United States does not object, in essence, to Driscoll's suggestion that references in the Indictment which define the public's right to honest services or which reference Celona performing those acts without a conflict of interest, are appropriately removed. As Driscoll points out, the United States' position is that she and Urciuoli paid Celona for performing official acts, a theory of honest services mail fraud prosecution more akin to one of quid pro quo bribery. Consistent with that reasoning, and in keeping with the <u>Urciuoli</u> court's conclusion that "[n]othing in Rhode Island law purports to authorize such conduct," 513 F.3d at 299, in response to Driscoll's and Urciuoli's motions to strike, the United States contends that the following sections in the Indictment can be stricken:

> 10. The State of Rhode Island and its citizens had an intangible right to the honest services of its officials and employees. ~~As an elected public official of the State, Celona therefore owed the State and its citizens a duty to: (a) refrain from receiving payments and benefits that would, (I) improperly affect the performance of his official duties or (ii) influence his official action or inaction; and, (b) disclose conflicts of interest and other material information in matters over which he exercised influence, authority, and discretion that resulted in his personal gain.~~
>
> 14. From in or about August of 1997, and continuing until on or about January 8, 2004, in the District of Rhode Island, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, knowingly, wilfully, and unlawfully combined, conspired, confederated, and agreed with each other, and with Celona, to commit an offense against the United States, specifically, having devised and intending to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona ~~and to have those services~~

~~performed free from deceit, favoritism, bias, conflict of interest and self-enrichment~~ and for the purpose of executing that scheme and artifice, to knowingly and willfully cause to be place in an authorized depository for mail, according to the directions thereon, to the person to whom it was addressed, matter to be delivered by the United States Postal Service, in violation of 18 U.S.C. §§ 1341 and 1346.

18. It was further part of the conspiracy that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, along with Celona, knowingly and willfully failed to disclose to the public ~~that Celona had an improper conflict of interest which deprived the State of Rhode Island and its citizens of their intangible right to his honest services in~~ that Celona obtained money from RWMC in exchange for his political support.

20. It was further part of the conspiracy that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, and Celona deceived the State of Rhode Island and its citizens concerning his relationship with RWMC by, among other things:

a. disguising the nature of Celona's relationship with RWMC by having the Village hire and pay Celona;
b. ~~failing to disclose Celona's conflict of interest, including to the Ethics Commission;~~
c. providing false and misleading information to the Ethics Commission;
d. seeking an advisory opinion from the Ethics Commission based on false, misleading, and incomplete information.

96. The Grand Jury further charges that from in or about August 1997, through in or about January 8, 2004, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, devised and intended to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona ~~and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.~~

100. It was further part of the scheme that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, along with Celona, knowingly and willfully failed to disclose to the public that ~~Celona had an improper conflict of interest which deprived the State of Rhode Island and its citizens of their intangible right to his~~

> ~~honest services in that~~ Celona obtained money from RWMC in exchange for his political support.
>
> 102. It was further part of the scheme that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, and Celona deceived the State of Rhode Island and its citizens concerning his relationship with RWMC by, among other things:
> a. disguising the nature of Celona's relationship with RWMC by having the Village hire and pay Celona;
> ~~b. failing to disclose Celona's conflict of interest, including to the Ethics Commission;~~
> c. providing false and misleading information to the Ethics Commission;
> d. seeking an advisory opinion from the Ethics Commission based on false, misleading, and incomplete information.
>
> 106. The Grand Jury further charges that, as described in paragraphs 97–103 of Count 2, of this Indictment, as though fully set forth herein, from in or about August1997, through in or about January 8, 2004, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, devised and intended to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona ~~and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment~~.

In addition, since the United States' theory of the case does not incorporate any aspects of State Ethics Laws, Urciuoli, 513 F.3d at 289-99, the United States proposes the following also be stricken from the Indictment:

> 11. ~~The Rhode Island Ethics Commission ("Ethics Commission") was an independent commission created by the State of Rhode Island. The Ethics Commission was charged with ensuring that public officials and employees adhered to the highest standards of ethical conduct, respected the public trust and the rights of all persons, were open, accountable, responsive, avoided the appearance of impropriety, and did not use their position for private gain or advantage. In June of 1987, the Rhode Island General Assembly enacted the Rhode Island Code of Ethics in Government ("Code of Ethics"). The Ethics Commission had the authority to investigate violations of the Code of Ethics and enforce~~

> ~~its provisions. The Ethics Commission also possessed the authority to issue advisory opinions relating to the requirements under the Code of Ethics. As an elected State official, Celona was subject to the Code of Ethics.~~

**D. Driscoll's Acquittal on the Conspiracy Charge Does Not Warrant Striking All Factual Allegations Against Her In the Indictment**

Driscoll contends that the jury's acquittal of her on the conspiracy count in the Indictment warrants striking all paragraphs in the Indictment which also allege she committed acts in furtherance of the scheme to defraud the public's right to the honest services of John Celona. Driscoll posits that her acquittal on conspiracy to commit honest services fraud leaves her charged merely with aiding and abetting Urciuoli in his commission of the scheme to defraud. Even if it did, this would not provide a basis upon which to strike the Indictment's factual allegations against her.

While the United States agrees that Driscoll's name should be stricken from those sections in the Indictment charging conspiracy, paragraphs 14, 17 through 20, the allegations she requests be stricken also constitute the Indictment's allegations of the means and methods of the scheme and the acts she committed in furtherance of the scheme. For example, paragraphs 95 through 98 allege the scheme to defraud and the principal objects of the scheme:

> 95. The Grand Jury realleges and incorporates by reference paragraphs 1 through 12 of this Indictment, as though fully set forth herein.
>
> 96. The Grand Jury further charges that from in or about August 1997, through in or about January 8, 2004, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, devised and intended to devise a scheme and artifice to defraud the State of Rhode Island and its citizens of their intangible right to the honest services of John Celona and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-

enrichment.

**A. The Principal Objects of the Scheme**

> 97. It was the object of the scheme to pay money to Celona, pursuant to a consulting agreement, so as to improperly influence and affect the official actions of Celona, specifically, to cause him to use his influence, power, and authority as a State Senator to benefit the political and financial interests of RWMC and its affiliates.
>
> 98. It was further an object of the scheme to deceive the State of Rhode Island and its citizens concerning Celona's relationship with RWMC in order for Celona to continue to promote the political interests of RWMC and its affiliates.

The Indictment goes on to allege that as part of the scheme, Urciuoli and Driscoll, among other things, influenced and affected Celona in his official actions as a State Senator and Chairman of the Senate Corporations Committee in a manner which benefitted RWMC and its affiliates. Indict. ¶¶ 99-102. The Means and Methods section of the Indictment concludes "[i[t was further part of the scheme that defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, and Celona undertook the political activities described at paragraphs 21 to 94 of this Indictment, as though fully set forth herein, on behalf of RWMC." Indict. ¶ 103. Thus, many of the allegations Driscoll requests stricken are the allegations which support the remaining count with which she is charged, substantive mail fraud.[3] For example, Driscoll asks the Court to strike paragraph 23 which alleges that:

> On or about October 15, 1997, DRISCOLL drafted a job description for Celona, entitled "Marketing Associate for Senior

[3] As discussed above, even if there were no Count 2 in the Indictment, Driscoll's name would remain in the overt acts section of the conspiracy count because at the time of the conspiracy, she was employed by RWMC, a remaining coconspirator, and acting in her official capacity as a vice-president, or agent, of RWMC.

> Affairs." The job description identified the "objective" of the job to be "to heighten awareness among seniors (the elderly) of the greater Providence community as to programs and services available at Roger Williams Medical Center and its affiliated entities." The job description also provided a list of duties for Celona to perform and stated that "this position reports to the Senior Vice President, External Affairs, Corporate Communications and Development." At the time, DRISCOLL was the Senior Vice President, External Affairs, Corporate Communications and Development.

Indict. ¶ 23. Driscoll also requests that the Court strike paragraph 32 which alleges that "on diverse dates from in or about February 27, 1998, through on or about January 8, 2004, defendants, URCIUOLI, DRISCOLL, SANGERMANO and RWMC, caused 72 checks to be issued to Celona by mail, totaling approximately $260,638.63, which money was disguised as payments by the Village for services as a consultant on elderly affairs." While striking reference to Driscoll in the paragraphs of the Indictment charging conspiracy is appropriate, striking the Indictment's allegations that she committed certain acts in furtherance of the scheme is not. The fact that the Indictment charges the same acts in support of the conspiracy count as those underlying the substantive mail fraud charge is appropriate and legally proper. See United States v. Bayer, 331 U.S. 532, 542 (1947) (stating that "the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself).

Driscoll's claim that her acquittal on the conspiracy count constitutes a bar to further prosecution of her for substantive mail fraud is also without merit. "It is clear, of course that prosecution of a particular defendant for both conspiracy and the substantive offense does not ordinarily constitute double jeopardy." Ottomano v. United States, 468 F.2d 269, 271 (1st Cir.

1973). "Indeed, it has long been established that 'conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes,' " United States v. Fornia-Castillo, 408 F.3d 52, 69 (1st Cir. 2005) (quoting United States v. Lanoue, 137 F.3d 656, 662 (1st Cir. 1998)). This is so because "the agreement to do the act is distinct from the [completed] act itself." Fornia-Castillo, 408 F.3d at 69 (quoting United States v. Felix, 503 U.S. 378, 390-91(1992)). Because conspiracy and the substantive crime of mail fraud are separate offenses, the jury's verdict acquitting Driscoll of conspiracy and convicting her of mail fraud are not inconsistent. See Callanan v. United States, 364 U.S. 587, 593 (1961).

Although the First Circuit noted that Driscoll was convicted on an aiding and abetting theory, it is unclear upon what evidence the court based this conclusion. It is not possible to know the jury's basis for finding Driscoll guilty. Driscoll's acquittal on the conspiracy charge does not mean that her participation in the scheme commenced after the consulting agreement was finalized and after the April 4, 2008, letter to the Ethics Commission, as she suggests. Just because the jury did not find that she conspired with Urciuoli to commit honest services mail fraud, does not mean that it concluded that she did not initially orchestrate the scheme to defraud and commit acts in furtherance of the scheme early on in Celona's relationship with RWMC. This is precisely what the Indictment alleges. Indict. ¶¶ 23, 25. Simply put, the jury did not acquit Driscoll of honest services mail fraud.

### E. The Indictment Properly Alleges that Defendants Influenced and Affecting Celona In His Official Actions as Chairman of the Corporations Committee

Driscoll complains that paragraph 101 of the Indictment alleges that she "influenced and affected Celona in his official actions as a State Senator and Chairman of the Corporations

Committee." Indict. ¶ 101. Driscoll argues that such language is inappropriate because she left RWMC in May of 2000, and Celona became Chairman of the Corporations Committee in January 2001.[4]

It is well-established that the United States need not prove every allegation in an indictment charging mail fraud. See United States v. Wells, 127 F.3d 729, 743 (1st Cir. 1997); United States v. Wellington, 754 F.2d 1457, 1462 (9th Cir. 1985). "All that the government need do is prove that the defendant is guilty of every element of the crime with which he is charged." Wells, 127 F.3d at 743.

Driscoll's argument ignores paragraph 101's allegation that she and her codefendants Urciuoli and RWMC influenced and affected Celona as a Senator and as Corporations Chairman. The paragraph appropriately asserts that the three codefendants impacted Celona's official actions in both capacities, which they did. The jury is unlikely to be confused concerning Driscoll's lack of contact with Celona after he became Corporations Chairman, given her counsel's likely repeated emphasis to the jury that she left RWMC in May of 2000.

[4] Driscoll also suggests that the United States' theory of the case is primarily aimed at official actions Celona only had the power to effectuate after he became Corporations Chairman. Driscoll's argument is squarely contradicted by the allegations in the Indictment. See Indict. ¶¶ 33, 39-40, 49, 54, 61, 66.

## III. Conclusion

Based upon the foregoing, the United States respectfully requests that defendant Driscoll's motion to strike certain allegations from the Indictment be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on June 18, 2008, I electronically filed this Objection and Memorandum with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Robert Flanders, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

/s/ Dulce Donovan