UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' OBJECTION TO DEFENDANT ROBERT URCIUOLI'S MOTION TO DISMISS PORTIONS OF THE INDICTMENT, OR IN THE ALTERNATIVE, FOR LIMITING INSTRUCTIONS**[1]

Defendant Robert Urciuoli has moved the Court to dismiss portions of the Indictment, or, in the alternative, for limiting instructions. The United States objects to defendant Urciuoli's request. The bases for the United States' objection are detailed in the accompanying memorandum of law filed simultaneously herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5001 - fax
luis.matos@usdoj.gov

[1] Urciuoli has also joined in defendant Driscoll's Motion in Limine for Preliminary Instruction of the Jury.

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5001 - fax
dulce.donovan@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT ROBERT URCIUOLI'S MOTION TO DISMISS PORTIONS OF THE INDICTMENT, OR IN THE ALTERNATIVE, FOR LIMITING INSTRUCTIONS**

## I. Introduction

Defendant Robert Urciuoli has moved to dismiss the portions of the Indictment which allege John Celona's participation in "general health care legislation" and Celona's involvement in the contract negotitations between Roger Williams Medical Center (RWMC) and Blue Cross Blue Shield (BCBS) and United Health Care.[2] In the alternative, Urciuoli asks the Court to issue certain limiting instructions addressing those subjects.

Urciuoli's contention that Celona's involvement in the contract negotiations between RWMC and the insurers cannot form the basis of an honest services fraud prosecution is baseless. Urciuoli made this claim on appeal and it was rejected. The First Circuit stated "the insurance episodes were properly considered as potentially criminal." United States v. Urciuoli, 513 F.3d 290, 296 (1st Cir. 2008). Similarly, Urciuoli's position that Rhode Island General Law § 36-14-7(b) permitted Celona's involvement in alleged "general health care legislation" is also in contravention of the Circuit's decision in Urciuoli: "Nothing in Rhode Island law purports to

---

[2] Urciuoli's motion to dismiss is a rehash of arguments he made before the first trial, a point he concedes by incorporating his prior motion. Uricouli Supp. Mem. at 2.

authorize or protect such conduct." 513 F.3d at 299. Accordingly, the portions of the Indictment alleging these actions should not be dismissed nor are preliminary instructions on these topics warranted.

## II. Argument[3]

### A. Motion to Dismiss Standard

An indictment is deemed legally sufficient if it "elucidates the elements of a crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions for the same offense." United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993). Federal Rule of Criminal Procedure 12(b) provides that "[a]ny defense, objection, or request, which is capable of determination without trial of the general issue may be raised before trial by motion." An indictment's validity is tested solely by its allegations, not by whether the United States can prove its case at trial. See Costello v. United States, 350 U.S. 359, 363 (1956).

### B. Urciuoli Clearly Holds that Celona's Involvement in Negotiations Between RWMC and BCBS and United Are Properly Considered as Potential Violations of the Honest Services Fraud Statute

In reading Urciuoli's motion, one wonders whether he, or his counsel, has read the First Circuit's decision in his own case. In his motion, Urciuoli contends that Celona's involvement in the negotiations between RWMC and BCBS and United cannot, as a matter of law, serve as a basis for criminal liability under the honest services mail fraud statute. Urciuoli Supp. Mem. at 2. He is wrong. In Urciuoli, after finding that the evidence relating to Celona's work on the

[3] The United States respectfully refers the Court to its Memorandum in Support of its Objection to Driscoll's Motion for Relief from Prejudicial Joinder for a complete factual recitation of the case.

ambulance runs was not a crime, the First Circuit stated "[b]y contrast, Celona's conduct vis a vis the insurers was closely related to his official functions including legislation." Urciuoli, 513 F.3d at 296. The evidence, the court noted, was that BCBS and United were "regularly concerned" with matters before the Senate Corporations Committee. After Celona became Chairman of the Committee, with considerable power over health care legislation, "Urciuoli and Celona sought to exploit this connection to the legislative process." Id. Indeed, "Celona became involved with the negotiations between RWMC and the insurers, and he did so confessedly to bring pressure on the latter to settle on terms favorable to RWMC." Id. Further, "[c]onsiderable evidence, including communications between Urciuoli and Celona, supported the government's view that, with active help of Celona, Urciuoli was deliberately seeking to invoke the threat of Celona's power over legislation." Id. at 297. Accordingly, the court concluded, "the insurance episodes were properly considered as potentially criminal . . . ." Id. Thus, Urciuoli's motion to dismiss portions of the Indictment alleging these actions should be denied.

### C. Nothing in Rhode Island Law Immunizes Urciuoli's Conduct In Paying Celona for Taking Official Action Concerning Alleged "General Health Care Legislation"

Urciuoli also urges the Court to dismiss those portions of the Indictment which allege that Celona participated in "general health care legislation." Urciuoli Supp. Mem. at 1. He claims that under Rhode Island General Law § 36-14-7(b), Celona's participation in "general health care legislation" cannot serve as the basis for imposing criminal liability under the honest services mail fraud statute. Because the First Circuit has already essentially rejected such a claim, Urciuoli's motion should be denied.

Whether the legislation which Urciuoli paid Celona to take official action on constitutes

"general health care legislation" is a question of fact for the jury, not an issue which the Court can resolve in deciding Urciuoli's motion to dismiss. United States v. Triumph Capital Group, Inc., 260 F. Supp.2d 44, 448 (D. Ct. 2002) ("a technically sufficient indictment 'is not subject to dismissal on the basis of factual questions, the resolution of which must await trial.' " Id. (quoting United States v. Alfonso, 143 F.3d 772, 776-77 (2d. Cir. 1998)).

More importantly, Urciuoli's argument that Celona's involvement in alleged "general health care legislation" somehow immunizes his criminal conduct is at odds with the Circuit's decision in Urciuoli. He made the same argument on appeal, which the court rejected.[4] In Urciuoli, the Circuit remarked that whether "conceivably, in some circumstances, state law might . . . 'immunize' conduct that would otherwise be a federal crime . . . may depend *inter alia* on precisely what the government has charged." 513 F.3d at 289. The court continued: "[t]he issue could be pertinent here *if* the government in this case had chosen to proceed on the theory that a conflict of interest alone (as opposed to a bribe or concealment of a conflict) was a basis for conviction." Urciuoli, 513 F.3d at 298-99 (emphasis in original). Instead, the court observed, "the government's position throughout [has been that] Celona was being paid for performing official acts - specifically, that the case [is] one of quid pro quo bribery with payments routed through the Village as disguise. Nothing in Rhode Island law purports to authorize or protect such conduct." Id. at 299 (emphasis added). See also R.I. Gen. L.

[4] In summarizing defendants' appellate claims concerning the application and import of Rhode Island law, the court stated "Urciuoli and Driscoll sought to argue in the district court that state law permitted Celona to vote on legislation affecting RWMC, despite his employment by a partly owned subsidiary of RWMC, so long as the legislation affected RWMC no more than any other hospital provider. R.I. Gen. Laws § 36-14-7." Urciuoli, 513 F.3d at 299.

§ 36-14-5(i).[5] Thus, Urciuoli's contention that his payments to Celona for official actions on general health care legislation are authorized or immunized under Rhode Island law lacks merit. His motion to dismiss should be denied.[6]

**D. Urciuoli's Request for Preliminary Instruction of the Jury Asks the Court to Make Factual Findings Reserved for the Jury and Is Not Supported by the First Circuit's Decision in Urciuoli**

Should the Court deny his request to dismiss portions of the Indictment, in the alternative, Urciuoli asks the Court to preliminarily instruct the jury that: (1) state law permitted Celona to participate in general health care legislation that would affect RWMC the same as other health care institutions; (2) the Ethics Commission determined that Celona could take action concerning broad-based healthcare matters; and (3) evidence concerning Celona's involvement in the BCBS and United negotiations may only be considered to the extent the jury determines that Urciuoli intended to "affect the legislative process." Urciuoli Supp. Mem. at 2.

Each of Urciuoli's requests for a preliminary instruction is inappropriate because it asks the Court to determine facts the determination of which fall solely within the province of the jury. For example, the accuracy of defendants' representations to the Ethics Commission is one of the key issues in the case and involves factual questions the jury will have to decide. It would be

[5] Section 36-14-5(i) provides the following:

> No person shall give or offer to any person covered by this Code of Ethics . . . any gift, loan, political contribution, reward or promise of future employment based on any understanding or expectation that the vote, official action or judgment of said person would be influenced thereby.

[6] Indeed, the Circuit commented that the evidence concerning "Celona's actions in promoting or blocking legislation to favor RMWC . . . alone . . . probably would have assured conviction, at least, or especially of Urciuoli." Urciuoli, 513 F.3d at 297.

wholly inappropriate for the Court to instruct the jury concerning the import of an Ethics opinion which is based on misrepresentations the Indictment alleges defendants made in order to conceal the fact that Celona was taking political action on behalf of RWMC. Indict. ¶ 44.

Furthermore, the Ethics Commission opinion, which was based on Urciuoli's and Driscoll's false and fraudulent representations concerning the nature of the work Celona had been and would be performing, and the true nature of who would be paying him, is additional proof that one of the objects of the scheme, to deceive the public, had been accomplished. It is not evidence of full disclosure and it does not shield Urciuoli or Driscoll from criminal liability, as Urciuoli's preliminary jury instruction suggests.

In addition, Urciuoli's request for instructions concerning what Celona was permitted to do either under state law or the fraudulent Ethics Commission opinion should be rejected based on the First Circuit's clear pronouncement that "nothing" in Rhode Island law authorizes or protects the conduct at issue in this case, namely that Urciuoli and Driscoll paid Celona for official acts with payments routed through the Village. Urciuoli, 513 F.3d at 299. Not only are Urciuoli's requested state law instructions not "pertinent" as noted by the First Circuit, but Rhode Island law specifically prohibits the type of conduct with which Urciuoli is charged. , Urciuoli, 513 F.3d at 298-99. See also R.I. Gen. L. § 36-14-5(i). Moreover, in responding to defendant Driscoll's motion to strike, the United States does not object to striking language in the indictment which arguably references state law in defining what honest services John Celona owed to the public, thus making Urciuoli's requested state law instructions clearly inapplicable to the case.

Furthermore, Urciuoli's insistence on an instruction that Celona's "simpl[e] facilita[tion]"

of meetings between RWMC and BCBS and United, in the absence of evidence that he specifically intended to affect the legislative process as it pertained to insurance carriers, is inappropriate given the allegations in the Indictment, the United States' theory of the case, and the Circuit's specific recognition that Urciuoli's invocation of the threat of Celona's power over the legislation constitutes a violation of the honest services fraud statute.

The Indictment avers that "[o]n or about various dates from the fall of 1997 through the end of 2003, Urciuoli advised Celona that he was not satisfied with the reimbursement rates that the Hospital was receiving from Blue Cross and United and directed Celona to advocate, as Chairman of the Senate Corporations Committee, for more favorable reimbursement from each organization." Id. ¶ 74. Similarly, the Indictment states that "[o]n or about February 10, 2001, Celona sent an electronic mail message to Urciuoli advising that he had met with certain individuals from Blue Cross and a hospital association to discuss reimbursement issues. Celona had called the meeting, by virtue of the power of his appointment as Chairman of the Corporations Committee, in order to advocate RWMC's position. At the meeting, Celona advised representatives of Blue Cross that he wanted to see Prompt Payment accomplished so that hospitals could get their fair share of reimbursement." Id. ¶ 78. Further, paragraph eighty-four alleges that "[o]n or about a date prior to January 30, 2003, Urciuoli requested that Celona, by virtue of the power of his appointment as Chairman of the Corporations Committee, obtain a meeting with the Chairman of Blue Cross in order to discuss on-going contract negotiations because RWMC was having difficulty obtaining a contract on terms favorable to RWMC." See also id. ¶ 85. The Indictment contains similar language concerning the negotiations with United Health Care. See Indict. ¶¶ 87-88. Thus, the Indictment alleges not only Celona's "facilitation"

of meetings between RWMC and the insurers, but that Urciuoli enlisted Celona's assistance in RWMC's negotiations with BCBS and United in Celona's official capacity, and that Celona took action in his official capacity.

In addition, Urciuoli's requested instructions attempt to add an element to the United States' burden of proof in an honest services fraud prosecution which is not supported by the case law. Urciuoli asks for a preliminary instruction to the jury that Celona's involvement in the insurer meetings can only serve as a basis for a conviction of honest services mail fraud if he intended to "affect the legislative process as it pertains to insurance carrier."[7] Urciuoli Supp. Mem. at 2.

To establish a violation of 18 U.S.C. §§ 1341 and 1346, the government must prove three elements:

(1) a scheme, substantially as charged in the indictment, to defraud;

(2) the defendant's knowing and willing participation in this scheme with the intent to defraud; and

(3) the use of the United States mails, on or about the date charged, in furtherance of this scheme.

First Cir. Pattern Crim. Jury Instr. § 4.12 (1997); see United States v. Sawyer, 239 F.3d 31, 39-40 (1st Cir. 2001) ("Sawyer II").

As this Court is well-aware, § 1346 provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive the public of the intangible right of honest services of its

[7] Presumably, Urciuoli's argument is based on the First Circuit's statement that the evidence at the first trial showed that "Urciuoli and Celona sought to exploit" Celona's connection to the "legislative process" as Chairman of the Corporations Committee, before which the insurance companies had pending legislation. Urciuoli, 513 F.3d at 296.

elected officials." 18 U.S.C. § 1346. United States v. Sawyer , 85 F.3d 713, 723-24 (1st Cir. 1996) ("Sawyer I") (citing United States v. Grandmaison, 77 F.3d 555, 565-66 (1st Cir. 1996)). Because the Indictment here alleges such a scheme, with respect to the second element, the United States must prove that the defendant "acted with two kinds of intent: that [he] intended to deprive the public of [Celona's] honest services, and that [the defendant] intended to deceive the public." Sawyer II, 239 F.3d at 41. The first kind of intent requires either that the defendant "intended to influence [Celona] in [his] official action" or intended that Celona fail to disclose a conflict of interest resulting in personal gain. Id. at 40-41.

The United States may demonstrate intent to influence in several ways. "For example, a bribery-like, corrupt intent to influence official action necessarily is an intent to deprive the public of an official's honest services." Id. at 41. Urciuoli did not impose the additional requirement that in this case, in making out an honest services mail fraud claim, the United States must demonstrate that Urciuoli "specifically intended to affect the legislative process as it pertained to insurance carriers." Urciuoli Supp. Mem. at 2 (emphasis added). A legislator's official actions are not limited to working and voting on legislation. Urciuoli, 513 F.3d at 295. In addition, in making out an honest services fraud case, the United States need not prove the specific official act targeted by Urciuoli. See United States v. Potter, 463 F.3d 9, 18 (1st Cir. 2006). What is required is that the United States prove that the defendant intended to influence official action – Urciuoli did not change that element of the United States' proof.

The United States recognizes that one of the issues the Urciuoli court expressed concern over was how, in accordance with the honest services fraud statute, to define Celona's use of his legislative powers to extract favorable treatment from BCBS and United in favor of RMWC

513 F.3d at 297. The Urciuoli court's statements on how to instruct the jury on this issue, while not overwhelming, provide some guidance. For example, the court stated "[o]n the government's version of what happened, Celona's action could be viewed as receipt of payment for misusing his powers as a legislator" Id. at 297, which fits within the Circuit's prior pronouncements that in making out an honest service fraud case the United States is required to prove that the defendant intended to influence official action. Sawyer II, 239 F.3d at 41. As proposed, Urciuoli's requests for preliminary instructions concerning Celona's negotiations with the insurers are, among other things, too narrowly drawn and should be rejected.

## IV. Conclusion

Based upon the foregoing, defendant Urciuoli's motion to dismiss or, in the alternative, for preliminary jury instructions, should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401) 709-5000 - phone
(401) 709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on June 18, 2008, I electronically filed this Objection and Memorandum with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Robert Flanders, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

/s/ Dulce Donovan