**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI | : | |

## UNITED STATES' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY

On or about August 14, 2008, Defendant Robert Urciuoli provided notice to the Government that he intends to offer Ms. Patricia M. Moran as an expert witnesses at trial should the Court not grant his "various forthcoming motions in limine to exclude alleged evidence of concealment and the testimony of certain witnesses" in this matter. For the reasons contained in the memorandum of law filed simultaneously herewith, the Government moves to preclude the submission of any testimony by Ms. Moran at trial. In addition, the Government respectfully requests a hearing pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) to determine the admissibility of such testimony. Finally, the United States received notice of the proposed expert testimony yesterday, August 14, 2008. Accordingly, the United States requests leave to supplement this motion once it has an opportunity to fully evaluate the proposed testimony.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on August 15, 2008, I electronically filed this Motion In Limine To Exclude Expert Testimony with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Howard M. Cooper, Esq.
Todd & Weld LLP
28 State Street
Boston, MA 02109

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

Larry Tipton
One Center Place, Suite 220
Boston, MA 02108

/s/ Luis M. Matos

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF**
**ITS MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY**

On or about August 14, 2008, Defendant Robert Urciuoli provided notice to the Government that he intends to offer Ms Patricia M. Moran as an expert witnesses at trial should the Court not grant his "various forthcoming motions in limine to exclude alleged evidence of concealment and the testimony of certain witnesses" in this matter. Ex. 1. Defendant expects Ms. Moran to provide what he claims to be the following "opinions:"

1. That the April 6, 1998 letter from James McGuirk, Esquire, "reasonably disclosed" the interrelationships between Roger Williams Medical Center ("RWMC") and the other entities listed in the letter and that each of these entities would be considered a "business associate" under R.I. Gen. Laws § 36-14-2 by the R.I. State Ethics Commission and that it disclosed that each entity had a direct or indirect financial interest in the consulting agreement;

2. That the April 6, 1998 letter from James McGuirk, Esquire, "reasonably disclosed" that John Celona would engage in services that would directly benefit Elmhurst Extended Care, ("Elmhurst") and that Elmhurst and RWMC "would be" considered business associates by the R.I. State Ethics Commission and that it disclosed that each entity had a direct financial interest in the consulting agreement;

3. The Commission's April 23, 1998 Advisory Opinion informed Celona and defendants that Celona could fully participate in matters that fell within the "class exception" set forth in R.I. Gen. Laws § 36-14-7(b);

4. That the process of obtaining advisory opinions applies solely to elected officials; and

5. That Kathleen D'Arrezzo, Esquire, had no authority to speak or act on behalf of the Commission.

Close scrutiny of the proffered testimony reveals that the "opinions" break down as follows:

1. Factual conclusions which are the province of the jury:

   a. That the April 6, 1998 letter from James McGuirk, Esquire, disclosed the interrelationships between Roger Williams Medical Center ("RWMC") and the other entities;

   b. The letter disclosed that each entity had a direct or indirect financial interest in the consulting agreement;

   c. The letter from James McGuirk disclosed that John Celona would engage in services that would directly benefit Elmhurst;

   d. The letter from James McGuirk disclosed that RWMC and Elmhurst had a direct financial interest in the consulting agreement.

2. Legal Conclusions that are neither relevant nor the proper subject of expert testimony:

a. The entities would be considered "business associates" under R.I. Gen. Laws § 36-14-2 by the R.I. State Ethics Commission;

b. The process of obtaining advisory opinions applies solely to elected officials; and

c. Kathleen D'Arrezzo, Esquire had no authority to speak or act on behalf of the Commission.

The Government moves to preclude the submission of any testimony by Ms. Moran for the following reasons: (1) the evidence is not relevant; (2) the proffered expert testimony does not comply with Fed. R. Evid. 702; (3) the proffered opinions constitute legal opinions which Ms. Moran is not qualified to provide and which are presumptively inadmissible; and (4) the proffered testimony is likely to confuse the jury. The Government respectfully requests a hearing pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) to determine the admissibility of such testimony.

## I. Argument

### A. The Proposed Expert Testimony Is Not Relevant

The starting point for determining the admissibility of evidence is that all relevant evidence is admissible at trial. Fed. R. Evid. 401. As the proponent of expert testimony, the Defendant bears the burden of demonstrating its admissibility by a preponderance of proof. See In re Renzulin Products Liability Litigation, 309 F. Supp. 2d 531, 539 (S.D.N.Y. 2004), citing Daubert, 509 U.S. at 592 n. 10. The proffered testimony is not relevant.

The majority of Ms. Moran's proposed testimony goes towards what she believes the Commission would have done or what it stated, ie. the Commission would have considered the

entities to be business entities, the Commission's Advisory Opinion informed Celona and defendants that Celona could fully participate in matters that fell within the "class exception." Ex. 1. There is no need for this testimony because the Commissions' evaluation of James McGuirk's submission is a matter of public record. The Commission issued an advisory opinion. That advisory opinion may be relevant to defendant's state of mind. However, what the Commissioners who, unlike Ms. Moran, were actually on the Commission at the relevant time interpreted from the letter is irrelevant unless it is memorialized in the Advisory Opinion.

**B. The Opinions Are not Admissible Pursuant to Rule 702**

Pursuant to Federal Rule of Evidence 702, expert testimony is generally admissible under the following circumstances:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

First, the evidence must assist the trier of fact. "The proper inquiry is [whether] the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having specialized understanding of the subject matter involved . . . ." United States v. Lamattina, 889 F.2d 1191, 1194 (1st Cir. 1989) (internal quotations omitted); United States v. Sebaggala, 256 F.3d 59, 66 (1st Cir. 2001). In this case, the evidence will not be helpful to the jury and will supplant its role as trier of fact. In

order to be admissible, expert testimony must not only be relevant, but it must also "assist" the jury. United States v. Schneider, 11 F.3d 197, 203 (1st Cir 1997). See "This helpfulness requirement is 'akin to the relevance requirement of Rule 401, which is applicable to all proffered evidence, . . . but goes beyond mere relevance . . . because it also requires expert testimony to have a valid connection to the pertinent inquiry.' " In re Renzulin, 309 F. Supp. 2d at 540 (quoting Weinstein's Federal Evidence § 702.03[1] (Joseph M. McLaughlin ed., 2d ed. 1997)).

Nothing in the expert's testimony would be of assistance to the jury in determining the facts in issue. It is up to the jury to determine whether defendants concealed the true nature of their relationship with John Celona. The jurors are the triers of fact. In addition, any legal instructions to be provided are squarely within the province of the Court.

Second, pursuant to Rule 702, Ms. Moran must be qualified as an expert. Ms. Moran is not qualified to testify as an expert by knowledge, skill, experience, training, or education. Rule 702. Ms. Moran was apparently a member of the Commission from 2001 through 2006. Her resume does not indicate any study or experience with State Ethics Laws during the relevant time period of 1998. Rather, her training and expertise appears to be in the health care industry. Hence, defendant cannot qualify her as an expert.

Finally, there is nothing in defendant's proffer that indicates that Ms. Moran's testimony is (1) is based upon sufficient facts or data, (2) the product of reliable principles and methods, or (3) that she has applied the principles and methods reliably to the facts of the case, as is required under Rule 702. To extent defendant wishes to introduce speculative and irrelevant testimony about what the Commission would have done in 1998, she has no basis for such opinions. In

short, Ms. Moran has no substantive knowledge or expertise that is related to the relevant time period.

**C. Defendant's Proffered Expert Testimony Constitutes Legal Opinions and As Such, Is Presumptively Improper**

The proposed expert testimony is also improper because it is intended to provide legal opinions. See United States v. Bilzerian, 926 F.2d 1285, 1295 (2d Cir. 1991) (district court properly excluded expert testimony explaining how term is generally understood in securities industry); Marx & Co. , Inc. V. Diners' Club, Inc., 550 F.2d 505, 510-11 (2d Cir. 1977) (stating that expert's proffered legal opinion on meaning of certain contract terms constituted an invasion of court's providence to instruct jury on applicable law). Although Ms. Moran served as a Commissioner from 2001 through 2006, she is not an attorney, and has no educational or professional experience upon which to rely in order to opine about relevant Ethics Laws in 1998. Moreover, she seeks to opine about how the facts in this case would have comported with Ethics Laws. Such testimony, which would be akin to a retired Federal judge testifying about whether defendant violated the honest services mail fraud statute by virtue of his or her years of experience sitting on such cases, and as such, is inappropriate.

**D. The Proffered Expert Testimony Is Likely to Confuse the Jury**

Fed. R. Evid 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Not only are Ms. Moran's opinions not relevant, they are also precluded under Rule 403.

As the United States has previously addressed to the Court, it is not proceeding upon a conflict of interest theory in this case. The primary theory of the government's case is that Urciuoli and Driscoll paid Celona in exchange for official acts and hid that fact from the public in order to continue to pay Celona undetected. Thus, because the United States is not proceeding on a failure to disclose a conflict of interest theory of prosecution, expert testimony about the import of R.I. Ethics Laws is inappropriate and will only serve to confuse the jury. See United States v. Potter, 463 F.3d 9, 19 (1st Cir. 2006) ("[W]hat the jury is to be given is the law pertinent to the case before it.")

A legislator's duties to the public derive from his general fiduciary duty to the citizens and federal common law. United States v. Woodward, 149 F.3d 46, 62 (1st Cir. 1998); Sawyer II 239 F.3d at 39. Although in United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008) the First Circuit remarked that "conceivably, in some circumstances, state law might bear on what 'services' are owed by a state legislator," the court rejected the notion that state law was "pertinent" in this case because the United States "had [not] chosen to proceed on the theory that a conflict of interest alone (as opposed to a bribe or concealment of a conflict) was a basis for conviction." Urciuoli, 513 F.3d at 298-99. Instead, the court observed that "the government's position throughout [has been that] Celona was being paid for performing official acts - specifically, that the case [is] one of quid pro quo bribery with payments routed through the Village as disguise. Nothing in Rhode Island law purports to authorize or protect such conduct." Id. 513 F.3d at 299. (emphasis added).

This case is about quid pro quo bribery. Expert testimony about what constitutes a business associate under R.I. law and whether the class exception applies is not only irrelevant

but it will only serve to confuse the jury. Pursuant to Rule 403 this potential likelihood of jury confusion substantially outweighs the proffered evidence's limited relevance, if any, and the expert evidence should be excluded. See United States v. Shay, 57 F.3d 126, 132-33 (1st Cir. 1995). See also Torres v. County of Oakland, 785 F.2d 147, 150 (6th Cir. 1985) ("The problem with testimony concerning a legal conclusion is in conveying the witness' unexpressed and perhaps erroneous, legal standards to the jury.")

## II. Conclusion

Based upon the foregoing reasons, the Court should exclude Defendant's proffered expert testimony of Ms. Patricia Moran.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on August 15, 2008, I electronically filed this Memorandum in Support of Motion In Limine To Exclude Expert Testimony with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Howard M. Cooper, Esq.
Todd & Weld LLP
28 State Street
Boston, MA 02109

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

Larry Tipton
One Center Place, Suite 220
Boston, MA 02108

/s/ Luis M. Matos

# EXHIBIT 1

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

HOWARD M. COOPER
Email: hcooper@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

RECEIVED
AUG 15 2008
U.S. ATTORNEY
DISTRICT OF R.I.

August 14, 2008

*VIA E-MAIL AND FIRST-CLASS MAIL*

Luis M. Matos, Esq.
Dulce Donovan, Esq.
Assistant United States Attorneys
United States Attorney's Office - District of Rhode Island
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

**Re: <u>USA v. Urciuoli et al (1:06-cr-2)</u>**

Dear Counsel:

Please be informed that in the event that Robert Urciuoli's ('Mr. Urciuoli") various forthcoming motions in limine to exclude alleged evidence of concealment and the testimony of certain witnesses are not allowed, Mr. Urciuoli may call as an expert witness at trial former Rhode Island State Ethics Commission ("the Commission") member Patricia M. Moran ("Ms. Moran"). Although Ms. Moran may be examined on certain non-expert foundation and factual matters, Mr. Urciuoli expects to offer through her one or more of the following expert opinions:

1. that Attorney James McGuirk's April 6, 1998 letter submission to the Commission, and its enclosure, (Government Exhibit 149), reasonably disclosed to the Commission the inter-relationships, including the financial inter-relationships, between Roger Williams Medical Center ("RWMC"), Roger Williams Realty Corporation ("RWRC"), Roger Williams Hospital "(RWH"), Elmhurst Extended Care Facility, Inc. ("Elmhurst Extended Care") and The Village at Elmhurst ("the Village"), such that each of these entities would be considered by the Commission to be a "business associate" of each other as that term is defined under R.I. Gen. Laws § 36-14-2 for purposes of the requested advisory opinion, and further reasonably disclosed that each referenced entity had a potential direct or indirect financial interest in the consulting agreement with former Senator John Celona ("Celona");

2. that Attorney James McGuirk's April 6, 1998 letter submission to the Commission, and its enclosure, (Government Exhibit 149), reasonably disclosed to the Commission that former Senator Celona would engage in services to the direct

financial benefit of Elmhurst Extended Care, a wholly owned subsidiary of RWMC, and that RMWC and Elmhurst Extended Care would be considered by the Commission to be "business associates" of each other for purposes of the requested advisory opinion, and thereby reasonably disclosed that RWMC had a direct financial interest in the consulting agreement with Celona;

3. that the Commission's April 23, 1998 Advisory Opinion No.: 98-59 (Government Exhibit No. 163/163a) informed Celona, RWMC and its affiliates, the defendants and the public generally that Celona could fully participate in matters before the Rhode Island Legislature that fell within the so-called "class exception" set forth in Rhode Island General Laws § 36-14-7(b) and General Commission Advisory No. 3;

4. that the process of obtaining an Advisory opinion from the RI Ethics Commission under Rhode Island General Laws § 36-14-11 applies solely to public officials, did not impose any obligations on Mr. Urciuoli, is voluntary, and that there is no requirement for a public official to refrain from undertaking the activities which are the subject matter of the request before obtaining an opinion; and/or

5. that Katherine D'Arezzo, Esquire, a legal assistant at the Commission in 1998, had no authority to speak for or act on behalf of the Commission itself, that staff attorneys are part of the enforcement side of the Commission, are ethically separated from the Commission members themselves, and do not give legal advice to the Commission members, and that only Legal Counsel to the Commission provides legal advice to the Commission members.

As the basis for her opinions, Ms. Moran will rely upon her education, her experience, and in particular her experience as a former Commission member who sat on literally hundreds of Commission matters including requests for Advisory Opinions, her familiarity with the inner workings of the Commission based upon her personal observation, her familiarity and experience with Commission procedure and Rhode Island law concerning ethics guidelines applicable to public officials, and her review of documents in this case including Government Exhibits 149 (4/6/98 McGuirk submission requesting an Advisory Opinion), 151 (4/8/98 Healey letter to McGuirk), 152, 153, 154 (computer notes of legal assistant D'Arezzo), 159 (4/16/98 Healey letter to McGuirk enclosing draft opinion), 161 (4/21/98 Minutes of Open Session of the RI Ethics Commission), 162 (4/20/98 McGuirk letter to Healey) and 163/163a (4/23/98 Advisory Opinion). I am also enclosing a copy of Ms. Moran's resume which further describes her background, qualifications and experience.

Please note that Mr. Urciuoli is providing this disclosure despite the absence, to my knowledge, of any request by the Government pursuant to F.R. Cr. P. 16(b)(1)(C).

Thank you for your attention to this matter.

Very truly yours,

Howard M. Cooper

HMC/rd

Enclosures

cc: Robert Urciuoli
All counsel of Record (via e-mail)

# PATRICIA M. MORAN

**SUMMARY OF QUALIFICATIONS**

Extensive experience and responsibility in financial and operation analysis; capital finance; and team building and development. Specific skills in:

| | | |
|---|---|---|
| RELATIONSHIP MANAGEMENT | ORGANIZATION | PROJECT MANAGEMENT |
| BUDGETING | MARKETING | STRATEGIC PLANNING |

**EXPERIENCE**

**HOSPITAL ASSOCIATION OF RHODE ISLAND, PROVIDENCE, RI**
Vice President - Finance 2002- Present

- Responsible for annual budget, monthly statements, and audit.
- Negotiate for inflation adjustments for certain reimbursement.
- Analyze financial and utilization trends.
- Analyze and assess impact of legislative and regulatory reimbursement changes.
- Work with various member committees to resolve operational and financial issues.

**PARTNERS HEALTHCARE SYSTEM, BOSTON, MA**
Project Manager 2001- 2002

Simplified and streamlined tax-exempt equipment lease program

- Investigate, analyze, and solicit opportunities for business improvement.
- Develop and maintain relations with business, governmental, and affiliate entities.
- Develop and maintain credit and investor relations.
- Coordinate affiliate hospitals' debt issuance.

**NEIGHBORHOOD HEALTH PLAN OF RHODE ISLAND**
BUSINESS ANALYST 2000-2001

- Analyzed company position relative to competitors.
- Analyzed populations, and proposed rates for underwriting.
- Analyzed monthly utilization and financial information.
- Participated in quality performance reviews with community health centers.

**INDEPENDENT CONSULTANT** 1998 - 2000

- Researched and cataloged data for a national initiative regarding capital access for not-for-profit primary health care centers.
- Performed cost/benefit analyses and advised on marketing and advertising issues.
- Worked with a community-based organization team providing for educational and training programs for hard-to-place workers.

**CONFERENCE OF BOSTON TEACHING HOSPITALS (COBTH)/BOSTON ORGANIZATION OF TEACHING HOSPITAL FINANCIAL OFFICERS (BOTHFO), BOSTON, MA**
EXECUTIVE DIRECTOR 1996 - 1997

Arranged for a presentation by a major investment banking firm to COBTH which resulted in one of the member hospitals hiring the firm

Analyzed impact of federal Balanced Budget Act on reimbursement for Boston's teaching hospitals.

- Promoted the activities of COBTH and BOTHFO, including execution of first COBTH annual report.
- Responsible for management of all COBTH and BOTHFO programs and finances.
- Developed strategic plan and related budget.
- Prepared financial impact analyses based on proposed legislation for use by the teaching hospitals and their lobbyists.
- Initiated and organized meetings of key business and governmental leaders with the CEO and CFO memberships.
- Arranged for presentations by various industry representatives to address members' interests and concerns on current issues affecting health care organizations.
- Coordinated efforts of the membership, the Massachusetts Hospital Association, and the Massachusetts Business Roundtable to conceptualize and give rise to the shared responsibility legislation enacted by the Massachusetts legislature.

**MASSACHUSETTS HEALTH AND EDUCATIONAL FACILITIES AUTHORITY (HEFA)**
BOSTON, MA

DIRECTOR OF FINANCING PROGRAMS 1993 - 1996

Identified areas of concern or interest for current and potential clients and followed up with information germane to each client

- During the period July 1995 through February 1996, was designated Acting Executive Director; responsible for management of all HEFA affairs, including policy development, implementation, and review; managed staff of ten; promoted the activities of HEFA and developed uses for its resources.
- Led presentations to potential clients and competed with another state agency for clients.
- Negotiated bond covenants with client institutions, underwriters, credit enhancers, and their respective counsels.

SENIOR FINANCIAL ADVISOR/FINANCIAL ADVISOR 1988 - 1993

Negotiated bond terms and prices

- Prepared and presented credit analysis together with request for financing to HEFA's board of directors for approval.
- Performed all aspects relative to bond transactions and other related activities.

**RHODE ISLAND HEALTH AND EDUCATIONAL BUILDING CORPORATION** (RIHEBC)
PROVIDENCE, RI

EXECUTIVE DIRECTOR 1986 - 1988

Made Corporation user-friendly

Established the first office of a self-supporting state agency, which issued tax-exempt offerings. Responsible for the management of all RIHEBC's affairs, including budget, operations, and all aspects relative to bond transactions.

**STATE OF RHODE ISLAND, DEPARTMENTS OF EDUCATION; HUMAN SERVICES; AND MENTAL HEALTH, RETARDATION, AND HOSPITALS**

ACCOUNTANT/FISCAL MANAGEMENT OFFICER 1977-1986

Responsible for budget development, program budgeting and monitoring, policy enforcement, account fiscal management, and evaluations of proposals.

**PROFESSIONAL AFFILIATIONS**

| | |
|---|---|
| 2006-Present | Family Service of Rhode Island, Board Member |
| 2005-Present | RI Quality Institute Policy and Legal Committee |
| 2005-Present | Beacon Mutual Insurance Provider Relations Committee |
| 2004 | City of Cranston Financial Review Board, Chair |
| 2002-Present | RI Medicare Carrier Advisory Committee |
| 2002-Present | RI Medical Malpractice Joint Underwriting Association |
| 2001-2006 | RI Ethics Commission |
| 1996-Present | The Boston Economic Club |
| 1996-2002 | The Boston Private Industry Council |
| 1988-Present | Healthcare Financial Management Association |

**EDUCATION**

Master of Business Administration
Bryant University Graduate School, Smithfield, RI

Bachelor of Science, Finance
Bryant University, Smithfield, RI