CONFIDENTIAL

# MINUTES OF THE SPECIAL MEETING
# OF THE ROGER WILLIAMS MEDICAL CENTER
# HELD ON AUGUST 27, 1998

Following the regularly scheduled meeting of the Board, the Chairman, Mr. Cummings called for a confidential meeting of the Board, attendance at which was limited to Board members and invited counsel. Present were:

> Edward C. Arditte, Ursula Beauregard, Bernard V. Buonanno, Jr., Aram Chobanian, M.D., Herbert W. Cummings, Russell W. Field, Jr., Robert R. Gaudreau, Bradford Gorham, Esq., Peter A. Hollmann, M.D., William S. Klutz, M.D., Richard A. Licht, Esq., Raymond T. Mancini, Clifton A. Moore, Raymond F. Murphy, Jr., Philip O'Dowd, M.D., Nuala Pell and Joseph Tucci, M.D.
>
> Excused: Eugene M. McQuade

Also present was F. Dennis Saylor, Esq. of the law firm of Goodwin, Procter & Hoar and James R. McGuirk, Esq. of Edwards & Angell, LLP.

<u>Background</u>

Mr. Cummings presented to the Board, the suggested outline for the meeting. He, Mr. Cummings, would present the background, Mr. Arditte would outline the specific allegations, Mr. Murphy would comment on the categories of the most substantial allegations that Goodwin Procter & Hoar had merit, Mr. Gorham would report on certain corrective actions that were taken, and Mr. Mancini would report the findings and recommendations of the Executive Committee and Mr. Licht would explain certain confidentiality and legal issues to the Board.

Mr. Cummings reported that several employees had approached Dr. O'Dowd and made certain allegations concerning the use of Hospital resources by the Chief Executive Officer, Mr. Urciuoli. Dr. O'Dowd brought these allegations to Mr. Urciuoli's attention, but in Dr. O'Dowd's opinion, Mr. Urciuoli did not effectively respond. Dr. O'Dowd then brought the employee allegations to certain members of the Executive Committee.

The Executive Committee reviewed the allegations and deemed them serious enough to warrant additional inquiry and voted to hire an outside firm to investigate them. There was a consensus that the firm should be one with an outstanding reputation and preferably from outside Rhode Island. Mr. Cummings suggested Goodwin, Procter & Hoar in Boston based on his previous experience at Citizens and his suggestion was adopted.

Dennis Saylor of Goodwin, Procter & Hoar together with a forensic accountant, Robert Taylor, were engaged to make the inquiry. Mr. Cummings also reported that Mr. Urciuoli had engaged Mintz, Levin Cohn Ferris Glovsky & Popeo, P.C. of Boston to represent him. The

Executive Committee received Mr. Saylor's report and Mr. Urciuoli's response in July and they felt that the full Board should be briefed on the substance of the report and response.

Mr. Cummings emphasized that confidentiality was paramount. The Saylor report was protected by the Attorney-Client Privilege, but rumors of its contents could affect fund-raising, employee morale, merger and affiliation discussions and ultimately patient care. Mr. Cummings added that no one outside the Hospital was interviewed to substantiate or refute the allegations in order to keep disclosure at a minimum. The following report was the Executive Committee's distillation of the Saylor report, the Urciuoli response and their own knowledge of business practices and the parties involved. He thanked the Executive Committee for a difficult sixty days or so and asked Mr. Arditte for his report.

Specific Allegations

Mr. Arditte reported that there were eleven categories of allegations:

1. *Meals and Entertainment*—Mr. Murphy will report on this area.

2. *President's Fund*—This fund was established in the 1980's to allow the Hospital to participate in certain activities which are not appropriate for Medicare reimbursement. The purposes of this fund are so broad that it was not possible to classify any expenses as inappropriate with respect to this account and no reimbursement was sought from Mr. Urciuoli.

3. *Petty Cash*—There is a Hospital petty cash policy that sets a limit of $100 on expenditures. This limit was exceeded on several occasions, but not by any amounts deemed material either individually or in the aggregate.

4. *Personal Travel*—Mr. Murphy will report on this area.

5. *Home Office*—Mr. Urciuoli's contract provides that the Hospital will provide support facilities as necessary and appropriate. Mr. Urciuoli arranged for a home work station to be constructed at Hospital expense at an approximate cost of $3,000. There was no specific Board authorization for this expenditure, but the Executive Committee found no substantive abuse on the condition that Mr. Urciuoli returns the workstation at such time as he leaves employment at the Hospital.

6. *Personal Phones*—There was an allegation of abuse of hospital phones for personal purposes; but no evidence of substantial abuse was found.

7. *Charitable Contributions*—There was an allegation that the President's Fund was used for improper charitable contributions. The inquiry showed that the charities were all well known charities and given the broad charter of the President's Fund, no impropriety was found.



PRV_242155/56%J03! DOC/JMCGUIRK

RWMC010048

8. *Vendor Contracts*—There was an allegation that Mr. Urciuoli endeavored to direct Hospital's business to friends. The inquiry revealed that while certain efforts may have been made to so direct business, Mr. Urciuoli did not have any personal interest in these vendors and did not and would not benefit personally from these efforts, hence no impropriety was found.

9. *Loan Against Vacation Time*—There was an allegation that Mr. Urciuoli did not comply with the guidelines for loans against vacation time. There is a requirement that the loans be paid off on an annual basis, even though a loan could be taken out the next day. Mr. Urciuoli did not comply with the rules for these loans and procedures should be tightened. The Executive Committee considered this to be a technical violation and did not require personnel action against Mr. Urciuoli, although the policy will be enforced in the future.

10. *Purchase of Automobile from Hospital*—There was an allegation that in 1994, Mr. Urciuoli was able to buy his former lease car at a substantial discount. The Lexus LS400 was worth approximately $29,000 retail, but Mr. Urciuoli was allowed to buy the car for $10,000, the "Book Value". Mr. Arditte noted that this is standard practice in business and elsewhere except that the purchaser is given a Form 1099 for the difference between the retail value and the book value. There was no finding of impropriety on the part of Mr. Urciuoli with respect to this allegation.

11. *Bugging*—There was an allegation that Mr. Urciuoli's office was bugged, but no evidence of this was found. Mr. Urciuoli has stated that during the Columbia negotiations, he had a recording device installed because of the number and nature of the calls being received. Mr. Arditte concluded his report.

<u>Substantive Issues</u>

Mr. Murphy continued the Executive Committee report by noting that Allegation 2 dealing with "Meals and Entertainment" and Allegation 4 dealing with "Personal Travel" merited additional consideration.

*Meals and Entertainment.* Mr. Murphy reported that a review of American Express records for the period from January 1, 1996 to February 1, 1998 produced records of several dinners and entertainment functions that appeared to be family functions rather than hospital functions. Several functions took place on weekends and documentation of the business purpose of such entertainment was slight. Mr. Urciuoli's personal calendar does not substantiate the business purpose of such events.

*Personal Travel.* Mr. Murphy reported that a review of hospital expense reports and other information such as Mr. Urciuoli's calendar and seminar notices indicated that some reimbursement for business travel appeared to be unwarranted due to the personal or family nature of the trip.

Mr. Murphy continued that there was a second category of trips which were golf trips where Mr. Urciuoli had received reimbursement for his share of such expenses as being hospital related. Mr. Urciuoli was accompanied on these trips by attorneys, vendors, hospital industry executives and senior administrators of other Rhode Island hospitals. Mr. Urciuoli did not charge the time on these trips as vacation time.

The Executive Committee determined that at least $16,000 in Travel and Meals and Entertainment expense were apparently not Hospital related and Mr. Urciuoli was asked to reimburse the Hospital. Mr. Urciuoli reimbursed the hospital in this amount in July. His vacation records were also adjusted to reflect the use of vacation on such trips where a business purpose was not established. Mr. Murphy emphasized that this number was an interim number and if other items were discovered, additional reimbursement would be sought.

Mr. Murphy concluded by stating that Mr. Urciuoli and his counsel strenuously objected to the characterization of certain of these activities as personal, but nonetheless remitted the questionable amounts.

*Remedial Actions.* Mr. Gorham reported that Medicare regulations require immediate action when unauthorized expenses are discovered. Revised cost reports were submitted to Medicare reflecting an expense adjustment of $4,000 for the last closed fiscal year, 1996 and advising the intermediary that $22,000 in expenses should be deducted for fiscal year 1997 although this year has not been closed. Mr. Gorham felt that the Hospital had acted responsibly and aside from providing additional information, if requested, the Hospital action should be sufficient.

*Executive Committee Actions.* Mr. Licht thanked Mr. Cummings for his tremendous time commitment on behalf of the Hospital. He then turned to certain legal aspects of the Executive Committee actions. The Executive Committee had decided not to distribute the report to all members of the Board in order to preserve as much confidentiality as possible. Confidentiality was important because disclosure would hurt fund raising, affiliations, the reputations of innocent third parties and hospital operations. He added that pursuant to state law a trustee is considered to have discharged his duties if he or she relies on the report of an appropriate committee of the Board.

*Recommendations.* Mr. Mancini reported that the Executive Committee considered its options. The resignation or discharge of Mr. Urciuoli was the first consideration. Mr. Urciuoli had shown no interest in resigning since he enjoyed his job and in a resignation, he would receive no severance. A discharge of Mr. Urciuoli would exacerbate tensions within the Hospital, and it would affect merger discussions, disrupt hospital operations and there would be inevitable litigation. There is also a personal historical perspective: Mr. Urciuoli was generally regarded as having performed admirably during recent trying times such as the Columbia controversy.

Mr. Mancini continued that the Executive Committee had contemplated a paid Chair last October when he, Mr. Mancini, announced that he could not continue the chairmanship. The Executive Committee felt that a well-respected member of the business community and an

experienced merger and acquisition executive such as Mr. Cummings would help to bring certain factions together and would add credibility to our affiliation efforts.

Mr. Cummings announced that this was the conclusion of the Report of the Executive Committee. Mr. Buonanno asked to be recognized and expressed his tremendous respect and confidence that he had for the Executive Committee and the effort that they had put in on this difficult matter. He made a motion that the recommendations of the Executive Committee be accepted, i.e.,

1. That Herbert Cummings work with Mr. Urciuoli in bringing the diverse elements of the Hospital together and work with Mr. Urciuoli to effect a satisfactory affiliation or merger.

2. That Herbert Cummings be compensated for his services at a level that the Executive Committee deems appropriate.

3. That the Report of Goodwin, Procter & Hoar remain confidential.

4. That the actions taken by the Executive Committee in seeking repayment from Mr. Urciuoli and the subsequent amendment of the relevant cost reports are hereby approved.

5. That the Executive Committee institute additional controls on petty cash, travel and entertainment and uses of the President's Fund.

The motion was duly seconded and Mr. Cummings opened the meeting to discussion.

Dr. O'Dowd noted that the resolution did not mention Mr. Urciuoli and then asked what the resolution would mean to Mr. Urciuoli's position at the Hospital. Mr. Cummings replied that for the reasons presented by the Executive Committee, Mr. Urciuoli would remain as CEO.

A wide ranging discussion of all the issues ensued and each Trustee made observations on problems and the proposed solutions. There were serious concerns about the amount of Mr. Cummings' time commitment, the apparent leaks to the media and the damage that the divisions among the staff were inflicting on Hospital operations.

Dr. O'Dowd emphasized that he did not agree with the recommendations. He felt that:

1. Mr. Urciuoli had lost the ability to lead and command respect.

2. Significant members of the Medical Staff had lost faith in Mr. Urciuoli.

3. The expenses which the Executive Committee found were inappropriate by Mr. Urciuoli would have constituted grounds for immediate dismissal of any other Hospital employee.

CONFIDENTIAL

4. Those allegations which were found not inappropriate nevertheless called Mr. Urciuoli's judgment into question.

5. Mr. Urciuoli responded to valid inquiries of Dr. O'Dowd as Chief of Staff and as a member of the Board with disdain and a lack of honesty.

Mr. Gorham noted that Mr. Saylor's report was done quickly, but thoroughly, but no outside sources were contacted to verify or clarify information.

Mr. Cummings reiterated that Mr. Urciuoli had filed a detailed response to the report and strenuously disagreed with many conclusions and inferences in the report.

Dr. Tucci added that the Executive Committee of the Medical Staff had agreed to abide by the decision of the Executive Committee and the Board of Trustees. He continued to state that in his opinion the dissident faction would not abide by the decision of the Executive Committee of the Medical Staff and would not maintain confidentiality. Dr. Tucci emphasized that this group does not represent the Medical Staff as a whole.

Mr. Licht said that he was not surprised that there were two factions in the Hospital, but if the Hospital was to survive, everyone would have to work together in the best interest of the Institution.

Dean Chobanian added that he endorsed the recommendations of the Executive Committee, but he emphasized that the divisions in the Medical Staff had to be addressed promptly and Mr. Cummings' new role must be clearly presented if it was to be effective.

Dr. Klutz commented that the timing of this situation was not good. It was just not Columbia or Universal, the problems went back to Miriam, Kent, Memorial, St. Joseph's and then there were programmatic problems with the Cancer Grant, Radiation Oncology, the Oncology Program, in general, and the disassociation from Brown. There is not a sense of coordinated leadership, Bob has not seemed to be present during this last year.

Dr. Hollmann echoed many of Dr. Klutz's comments especially the perceived lack of effective leadership. Mr. Cummings' presence would help in some ways, but raises other questions of Mr. Urciuoli's leadership.

Mr. Licht clarified that Mr. Cummings was not going to "supervise" Mr. Urciuoli, he was to work with Mr. Urciuoli on repairing the rifts in the Medical Staff and seeking a merger or affiliation partner. Mr. Cummings would assess the situation and would report back to the Board on a variety of matters, certainly before the end of four months.

Mr. Arditte added that he felt that this plan was the only way to go, but if the Chairman determined that it wouldn't work, he would support a change in policy. Dr. O'Dowd indicated that he did not agree with proposed remedial plan and Mr. Urciuoli should be replaced.

CONFIDENTIAL

Mr. Gorham asked for cooperation and time to sort out the problems that these serious allegations had caused and added that the four months discussed earlier was an outside number and he urged an earlier resolution.

The Chairman called the question and the following Trustees voted in favor of Mr. Buonanno's motion:

Edward C. Arditte
Ursula Beauregard
Bernard V. Buonanno, Jr.
Aram Chobanian, M.D.
Herbert W. Cummings
Robert R. Gaudreau
Bradford Gorham, Esq.
Peter A. Hollmann, M.D.
Richard A. Licht, Esq.
Raymond T. Mancini
Clifton A. Moore
Raymond F. Murphy, Jr.
Joseph Tucci, M.D.

The following Trustees voted no:

Russell W. Field, Jr.
Philip O'Dowd, M.D.
Nuala Pell

The following Trustees abstained:

William S. Klutz, M.D.

Respectfully submitted,

James R. McGuirk
Secretary